# IN THE SUPREME COURT OF IOWA

No. 07–1117

Filed June 11, 2010

**JOHN DYKSTRA,**

Plaintiff,

vs.

**IOWA DISTRICT COURT FOR
JONES COUNTY,**

Defendant.

---

Certiorari from the Iowa District Court for Jones County, David Remley, Judge.

Inmate challenges inability to accrue earned time based on refusal to participate in sex offender treatment program. **WRIT SUSTAINED.**

Philip B. Mears, Mears Law Office, Iowa City, for plaintiff.

Thomas J. Miller, Attorney General, and Forrest Guddall, Assistant Attorney General, for defendant.

**STREIT, Justice**.

John Dykstra filed a postconviction action challenging the Iowa Department of Corrections' (IDOC) revocation of his ability to accrue earned time because he refused to participate in a sex offender treatment program (SOTP). IDOC's inmate classification requiring an inmate to participate in SOTP or lose the ability to accrue earned time implicates a liberty interest, and, therefore, the inmate must receive adequate procedural protections. Dykstra did not receive due process because IDOC relied on unadmitted factual allegations without providing adequate procedural protections.

### I.    Background Facts and Proceedings.

In 2005, Dykstra pleaded guilty to charges of simple assault, a simple misdemeanor, in violation of Iowa Code section 708.2(5) (2003) and dependent adult abuse, a class "D" felony, in violation of Iowa Code section 235B.20(5). The simple assault charge was pled down from an original charge of sexual abuse in the third degree. The dependent adult abuse charge was based on Dykstra's failure to pay his wife's nursing home bill. The district court sentenced Dykstra to thirty days for the simple assault conviction and to a term not to exceed five years for the dependent adult abuse conviction, to be served concurrently.

Dykstra completed the thirty day assault sentence while still in prison on October 9, 2005. On December 15, 2005, while still in the custody of the IDOC on the dependent adult abuse conviction, Dykstra had an orientation where he was told he would be required to participate in SOTP. An IDOC reception report recommended that Dykstra participate in SOTP based on the alleged circumstances of the simple assault as well as Dykstra's previous convictions and his inclusion on the sex offender registry. Referring to the alleged circumstances of the

simple assault, the reception report noted that Dykstra's wife, who lived in a nursing home because of multiple sclerosis, reported she was forced to perform oral sex on Dykstra against her will. IDOC appears to have based this factual summary on the minutes of testimony attached to the charging information.[1] The reception report also identified a 1983 indecent exposure conviction, a 1994 indecent exposure charge, a 1995 burglary conviction for stealing a neighbor's lingerie and sexually explicit photos, a 2000 prostitution solicitation charge, and Dykstra's presence on the sex offender registry when he entered prison.

Dykstra objected to the requirement that he attend SOTP, maintained that any sexual contact with his wife was consensual, and argued the simple assault did not contain a sexual element. On January 27, 2006, IDOC administered Dykstra a polygraph exam about the facts surrounding the simple assault, which Dykstra failed.

On February 16, 2006, Dykstra signed a refusal form for SOTP. Applying a 2005 amendment to Iowa Code section 903A.2, IDOC determined Dykstra was no longer eligible for earned time credit. Prior to Dykstra's refusal to participate in SOTP, his discharge date for the dependent adult abuse conviction was January 20, 2008. After Dykstra's refusal, his discharge date was changed to May 12, 2010[2].

Dykstra appealed to the deputy warden. The appeal was denied, and Dykstra filed a postconviction petition under Iowa Code section

---

[1] No evidence was entered to demonstrate Dykstra admitted the minutes of testimony. Neither the minutes of testimony nor the transcript from the hearing at which Dykstra entered his plea to simple assault are part of the postconviction record.

[2] It is unclear from the record whether Dykstra was discharged on May 12, 2010 and his case is therefore moot. *Wilson v. Farrier*, 372 N.W.2d 499, 501 (Iowa 1985). Regardless, because the underlying question is one of public importance that is likely to reoccur, we reach the merits. *Id.*

822.2(1)(*f*)[3] or in the alternative section 822.2(1)(*e)* or Iowa Code chapter 17A. The district court determined the suit was properly considered under section 822.2(1)(*f)* and denied relief. Dykstra filed a writ of certiorari challenging the district court's ruling denying relief pursuant to Iowa Code section 822.9.

## II. Scope of Review.

Generally, postconviction relief proceedings are reviewed for correction of errors at law. *DeVoss v. State*, 648 N.W.2d 56, 60 (Iowa 2002). We review questions of statutory construction, including Dykstra's claims as to the proper interpretation of Iowa Code section 903A.2, for errors at law. *In re A.W.*, 741 N.W.2d 793, 806 (Iowa 2007). Dykstra's claims alleging violations of his constitutional rights, however, are reviewed " 'in light of the totality of the circumstances and the record upon which the postconviction court's ruling was made.' " *Risdal v. State*, 573 N.W.2d 261, 263 (Iowa 1998) (quoting *James v. State*, 541 N.W.2d 864, 869 (Iowa 1995)). This is the functional equivalent of de novo review. *Id.*

## III. Merits.

Prior to 2001, Iowa Code section 903A.2 provided that inmates serving category "A" sentences were eligible for a sentence reduction of one day for each day of good conduct and, in addition, could earn a further reduction of up to five days per month for satisfactory participation in certain programs, including treatment programs. Iowa Code § 903A.2(1)(*a)* (1999). In 2000, the legislature amended section

---

[3]The original petition was filed under the 2005 code. Iowa Code section 822.2 was amended effective July 1, 2006 to make nonsubstantive corrections. See 2006 Iowa Acts ch. 1010, § 162. These corrections renumbered section 822.2's subsections and unnumbered paragraphs. Because this amendment did not make substantive changes and makes the subsections more easily identifiable, we refer to chapter 822 as set forth in the 2009 code.

903A.2 to provide that an inmate serving a category "A" sentence was "eligible for a reduction of sentence equal to one and two-tenths days for each day the inmate demonstrates good conduct *and* satisfactorily participates in any program or placement status identified by the director to earn the reduction." Iowa Code § 903A.2(1)(*a*) (2001) (emphasis added). This amendment became effective January 1, 2001. 2000 Iowa Acts ch. 1173, § 10. IDOC applied the 2001 amendment so that refusal to attend SOTP resulted in a loss of ninety days earned time but did not affect the inmate's ability to accrue time in the future. *Holm v. Iowa Dist. Ct.*, 767 N.W.2d 409, 415 (Iowa 2009).

In 2005, the legislature again amended Iowa Code section 903A.2(1)(*a*) to state "an inmate required to participate in a sex offender treatment program shall not be eligible for a reduction of sentence unless the inmate participates in and completes a sex offender treatment program established by the director." Iowa Code § 903A.2(1)(*a*) (Supp. 2005). Under IDOC policy applying this amendment, an inmate will no longer accrue any earned time after refusing to attend SOTP, but will not lose any previously accrued earned time.

Dykstra alleges the stopping of his ability to accrue earned time credit is improper for five reasons. First, Dykstra asserts application of the 2005 amendment violated the Ex Post Facto Clause of the Iowa and United States Constitutions. Second, Dykstra asserts the 2005 amendment to Iowa Code section 903A.2 should not be applied retroactively as a matter of statutory construction. Third, Dykstra argues Iowa Code section 903A.2 was improperly applied to him because he was not serving time for a sex offense. Fourth, Dykstra argues the prison's procedures for determining whether he was required to participate in SOTP violated due process. Finally, Dykstra claims IDOC

inappropriately relied on a polygraph examination to make a classification determination.

**A. Ex Post Facto Clause.** We recently held IDOC's application of Iowa Code section 903A.2, as amended in 2001 and 2005, to inmates whose crimes occurred prior to January 1, 2001 violates the Ex Post Facto Clause. *State v. Iowa Dist. Ct.*, 759 N.W.2d 793, 801–02 (Iowa 2009). We also recently held, however, that application of the 2005 amendment to inmates whose crimes occurred after enactment of the 2001 amendment but before enactment of the 2005 amendment does not violate the Ex Post Facto Clause. *Holm*, 767 N.W.2d at 416–17. The 2005 amendment was "merely a clarification of the 2001 amendment,"— and therefore, "did not result in more onerous punishment." *Id.* at 416. Consequently, the 2005 amendment did not violate the Ex Post Facto Clause when applied to an inmate whose offense occurred before the effective date of the 2005 amendment but after the effective date of the 2001 amendment. *Id.* at 417.

Dykstra argues that application of the 2005 amendment violated the Ex Post Facto Clause because he is serving a sentence for actions which took place in 2004. Under *Holm*, IDOC's application of the 2005 amendment to Dykstra did not violate the Ex Post Facto Clause.

**B. Retroactivity.** Dykstra argues section 903A.2, as amended in 2005, cannot be construed to apply retroactively to individuals whose crimes took place after enactment of the 2001 amendment but before enactment of the 2005 amendment. We have previously rejected this argument because we determined the amendment did not change the existing law, but merely clarified and corrected IDOC's application of existing law. *See Holm*, 767 N.W.2d at 416 n.3. Therefore, Dykstra's argument has no merit.

**C. IDOC Statutory Authority To Require SOTP.** Dykstra argues IDOC could not require him to participate in the SOTP because he was not convicted of a "sex offense" and was not serving a sentence for a sex-related crime when his ability to accrue earned time was revoked. The language of the 2005 amendment states: "an inmate *required* to participate in a sex offender treatment program shall not be eligible for a reduction of sentence unless the inmate participates in and completes a sex offender treatment program established by the director." Iowa Code § 903A.2(1)(*a*) (emphasis added). The statute does not set criteria for which inmates will be "required to participate." Iowa Code section 903A.4 states, however, that the director of IDOC "shall develop policy and procedural rules to implement sections 903A.1 through 903A.3."

The broad discretion granted to IDOC does not limit application of section 903A.2 to inmates serving sentences for particular crimes or crimes labeled as "sex offenses." There is no statutory limitation that would prevent IDOC from recommending SOTP for an inmate convicted of a crime that is not facially considered a sex offense where the factual circumstances of the crime are of a sexual nature.

Dykstra responds that even if IDOC has the authority to require SOTP, it does not have the statutory authority to stop his ability to accrue earned time on a sentence for a non-sex-related crime. By the time Dykstra was referred to SOTP, he was only serving a sentence for the non-sex-offense crime of dependent adult abuse based on a failure to pay nursing home bills. Iowa Code section 903A.2(1)(*a*) directs that an inmate required to participate in SOTP who refuses to do so, shall not be eligible for a reduction of "sentence." Section 903A.2 does not require that the "sentence" be one connected to the reason IDOC has required the inmate to attend SOTP. Instead, when IDOC requires SOTP and an

inmate refuses or is removed from the program, the inmate cannot accrue earned time toward any sentence the inmate is currently serving.

*State v. Valin*, 724 N.W.2d 440 (Iowa 2006), cited by Dykstra, does not provide support for his claims here. In *Valin*, we held it was an abuse of discretion for a district court judge to sentence Valin to SOTP as part of his probation for a 2005 OWI offense based on Valin's prior 1999 conviction for a sexual offense. 724 N.W.2d at 447–49. The statute at issue in *Valin* required that a condition of probation " 'promote the rehabilitation of the defendant or protection of the community.' " *Id.* at 445 n.3 (quoting Iowa Code § 907.6 (2005)). The court recognized that "a defendant's background and history is . . . relevant when determining the conditions of probation." *Id.* at 447. However, the court found an insufficient nexus between Valin's present conviction and the probation conditions. *Id.* Valin had already served his sentence for the prior conviction and had successfully participated in SOTP. *Id.* at 442. As the court explained, "it is axiomatic that [prior conviction] history is insufficient unless it reveals a problem currently suffered by the defendant relating to the need to rehabilitate the defendant or protect the community from the defendant." *Id.* at 447.

There may be some limitation on IDOC's discretion to require SOTP. This court's decision in *Maghee v. State*, 773 N.W.2d 228, 239 n.3 (Iowa 2009) suggests IDOC action may constitute "other agency action" under section 17A.19. Section 17A.19 allows, for example, judicial review and reversal of agency action which is unreasonable, arbitrary, capricious, or an abuse of discretion. Iowa Code § 17A.19(10)(*n*). We do not address the potential applicability of section 17A.19 to this case because the district court held that chapter 17A was not an appropriate

mechanism to review Dykstra's claims and Dykstra does not seek review of this holding.

Regardless, Dykstra cannot gain support from *Valin*. IDOC reached a determination that Dykstra's simple assault conviction contained a sexual element and therefore revealed a "problem currently suffered" in the words of *Valin*. Although this determination may have been procedurally flawed based on due process grounds, as discussed below, IDOC has statutory authority to rely on a current conviction for a non-sex offense when the underlying facts are of a sexual nature.

**D. Due Process.** Dykstra argues that regardless of IDOC's authority to require participation in SOTP, the procedures employed by IDOC violate his constitutional right to due process under the United States and Iowa Constitutions. Although in the past we have interpreted the United States and Iowa Constitutions "in a similar fashion," *State v. Seering*, 701 N.W.2d 655, 662 (Iowa 2005), we " 'jealously guard our right and duty to differ in appropriate cases.' " *State v. Cline*, 617 N.W.2d 277, 285 (Iowa 2000) (quoting *State v. Olsen*, 293 N.W.2d 216, 220 (Iowa 1980)), *overruled on other grounds by State v. Turner*, 630 N.W.2d 601, 606 n.2 (Iowa 2001). Because Dykstra has not advanced a standard for interpreting the due process clause under the Iowa Constitution different from its federal constitutional counterpart, we will apply the general principles as outlined by the United States Supreme Court. *See State v. Bruegger*, 773 N.W.2d 862, 883 (Iowa 2009). Even so, we do not necessarily apply the federal standards in the same way as the Supreme Court. *Id.*

"[T]he first step in any procedural due process inquiry is the determination of 'whether a protected liberty or property interest is involved.' " *Seering*, 701 N.W.2d at 665 (quoting *Bowers v. Polk County*

*Bd. of Supervisors*, 638 N.W.2d 682, 691 (Iowa 2002)).  After determining a liberty interest is involved, we consider three factors in analyzing what process is due:

> "First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirements would entail."

*Id.*

The United States Supreme Court has recognized two instances when liberty interests of prisoners are implicated.  First, when a restraint imposes "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life," and second, when a restraint "will inevitably affect the duration of [the inmate's] sentence."  *Sandin v. Conner*, 515 U.S. 472, 484, 487, 115 S. Ct. 2293, 2300, 2302, 132 L. Ed. 2d 418, 430–31 (1995).

When determining the existence of a liberty interest here, "[i]t is important . . . to precisely identify the right that [Dykstra] asserts as the basis for his liberty interest."  *Sanford v. Manternach*, 601 N.W.2d 360, 366 (Iowa 1999).  This court previously recognized a liberty interest in an inmate's ability to accrue earned time.  *Holm*, 767 N.W.2d at 417–18.

Recognition of a liberty interest in this circumstance is consistent with case law in federal and state courts, which have found a liberty interest in classification of a prisoner or parolee as a sex offender that requires participation in SOTP and implicates eligibility for non-discretionary parole or earned time credits.  The Tenth Circuit has held "it was the loss of the previously granted opportunity to earn good time credits at a higher level, combined with his classification as a sex

offender, that implicated a liberty interest." *Gwinn v. Awmiller*, 354 F.3d 1211, 1217 (10th Cir. 2004). Similarly, the Ninth Circuit explained that

> the stigmatizing consequences of the attachment of the "sex offender" label coupled with the subjection of the targeted inmate to a mandatory treatment program whose successful completion is a precondition for parole eligibility create the kind of deprivations of liberty that require procedural protections.

*Neal v. Shimoda,* 131 F.3d 818, 830 (9th Cir. 1997); *see also Coleman v. Dretke*, 395 F.3d 216, 223 (5th Cir. 2004) (finding a liberty interest "in freedom from the stigma and compelled treatment on which his parole was conditioned"); *Thomas v. Warden*, 891 A.2d 1016, 1027–28 (Conn. Super. Ct. 2005) (finding liberty interest where prisoner was classified as sex offender in prison system despite jury acquittal on sex offense charge); *cf. Gilmore v. Bostic*, 636 F. Supp. 2d 496, 511 (S.D. W. Va. 2009) ("Like the Fifth, Ninth, Tenth, and Eleventh Circuits, the court concludes that a sex offender treatment program could constitute a change in the conditions of confinement so severe as to essentially exceed the sentence imposed by the court. Here, although the plaintiff has no liberty interest in parole under the United States Constitution, he has been required to undergo treatment for behaviors in which it has not been proven he has engaged.").

The liberty interest at stake here compares closely to the liberty interest identified by the United States Supreme Court in *Vitek v. Jones*, 445 U.S. 480, 494, 100 S. Ct. 1254, 1264, 63 L. Ed. 2d 552, 565–66 (1980). *Vitek* held that a Nebraska statute authorizing correctional officials to classify inmates as mentally ill and transfer them to mental hospitals for involuntary confinement and mandatory behavior modification implicated the inmates' liberty interest. "[T]he stigmatizing consequences of a transfer to a mental hospital for involuntary

psychiatric treatment, coupled with the subjection of the prisoner to mandatory behavior modification as a treatment for mental illness, constitute the kind of deprivations of liberty that requires procedural protections." *Id.*

Dykstra's classification required him to attend mandatory behavior modification treatment—SOTP. Refusal to participate in SOTP makes Dykstra completely ineglible for any earned time. The stigmatizing consequence of being labeled as a sex offender, the mandatory behavior modification treatment, and the revocation of the inmate's ability to earn any time should he refuse to participate in SOTP demonstrate this initial classification implicates an "interest [that] has real substance." *Wolff v. McDonnell*, 418 U.S. 539, 557, 94 S. Ct. 2963, 2975, 41 L. Ed. 2d 935, 951 (1974).

Based on this recognized liberty interest, Dykstra argues IDOC failed to provide due process for the determination that he is required to participate in SOTP.[4] Dykstra argues IDOC relied on factual allegations to which he had never admitted and no court had determined were accurate. In the context of sex offender registration, we have held that where a factual inquiry outside the face of the conviction is necessary to determine sex offender status, "resort to some tribunal must be available to resolve disputes over these issues." *Kruse v. Iowa Dist. Ct.*, 712 N.W.2d 695, 700–01 (Iowa 2006). Similarly, we previously held an evidentiary hearing was required when IDOC conducted a sex offender risk assessment resulting in a heightened requirement of public notification because the assessment was based on adjudicative facts that

---

[4]Dykstra also complains that he did not receive due process for the determination that he refused to participate in SOTP. Dykstra does not contend, however, that he is or was willing to participate in SOTP and therefore does not put forth any argument for this court to address.

were related to the inmate's sex-offense conviction but were not in the record. *Brummer v. Iowa Dep't of Corr.*, 661 N.W.2d 167, 173–75 (Iowa 2003). As this court explained in *Brummer*,

> "Generally, a person has a constitutional due process right to an evidentiary hearing in accordance with contested case procedures if the underlying proceeding involves adjudicative facts," i.e., "individualized facts peculiar to the parties, which ordinarily ' "answer the questions of who did what, where, when, how, why, with what motive or intent." ' "

*Id.* at 172 (quoting *Greenwood Manor v. Iowa Dep't of Pub. Health*, 641 N.W.2d 823, 836 (Iowa 2002)).

In *Wolff*, 418 U.S. at 558, 94 S. Ct. at 2976, 41 L. Ed. 2d at 952, the United States Supreme Court held inmates were entitled to procedural due process protections in disciplinary hearings that could result in the forfeiture of an inmate's good-time credits. The court identified minimum requirements of procedural due process that must be satisfied before forfeiture of good-time credit could be imposed: (1) advance written notice of the claimed violation, (2) a written statement of the factfinders as to the evidence relied upon and the reasons for the disciplinary action taken, (3) a hearing, at which the inmate must be allowed to call witnesses and present documentary evidence, as long as it would not be unduly hazardous, and (4) a sufficiently impartial decisionmaker. *Wolff*, 418 U.S. at 563–71, 94 S. Ct. at 2978–82, 41 L. Ed. 2d at 955–59. Although later United States Supreme Court cases recognized certain instances where lesser procedural protections were required, the Court explained that the *Wolff* procedures are necessary for inquiries "designed to elicit specific facts." *Greenholtz v. Inmates of Neb. Penal & Corr. Complex*, 442 U.S. 1, 14, 99 S. Ct. 2100, 2107, 60 L. Ed. 2d 668, 679 (1979), *abrogated on other grounds by Sandin*, 515 U.S. at 480–84, 115 S. Ct. at 2298–2300, 132 L. Ed. 2d at 427–30.

The Supreme Court has applied the *Wolff* requirements to a situation similar to the SOTP classification here. *Vitek*, 445 U.S. at 494–97, 100 S. Ct. at 1264–66, 63 L. Ed. 2d at 565–67. In *Vitek*, the Supreme Court held unconstitutional a Nebraska statute authorizing correctional officials to classify inmates as mentally ill and transfer them to mental hospitals for involuntary confinement and mandatory behavior modification without a hearing and the protections of *Wolff*. *Id.* Specifically, *Vitek* required written notice of the proposed transfer to a mental hospital, a hearing "sufficiently after the notice to permit the prisoner to prepare" at which the prisoner may be heard, present documentary evidence, present witnesses, and cross-examine state witnesses, an independent decisionmaker, a written statement by the factfinder of the evidence relied upon, and qualified and independent assistance.[5] *Id.*

Courts have held that corrections departments violate procedural due process by classifying prisoners who have no sex-offense convictions for SOTP if they do not afford the procedural requirements identified by the Supreme Court in *Wolff*. *See, e.g., Gwinn*, 354 F.3d at 1218–19 (holding that classification of inmate who had never been convicted of a sex offense required the procedural requirements set forth in *Wolff*: "notice of the charges, an opportunity to present witnesses and evidence in defense of those charges, and a written statement by the factfinder of the evidence relied on"); *Neal*, 131 F.3d at 831 (holding Hawaii prisoner who was never convicted of a sex offense did not receive due process because the inmate was not provided a hearing at which he could have

---

[5]The court held such assistance was necessary based on the potential mental state of a prisoner who may be mentally ill. *Vitek*, 445 U.S. at 496–97, 100 S. Ct. at 1266, 63 L. Ed. 2d at 567.

called witnesses and presented documentary evidence, and rejecting argument that ability to write letters protesting classification satisfied *Wolff*).

Dykstra was entitled to due process because his liberty interest in earned time was affected by his classification as required to participate in SOTP. Dykstra argues his due process rights were violated because he did not receive the protections of *Wolff*, specifically advance written notice, a written statement of reasons and findings by the factfinder, and a neutral factfinder. Because IDOC relied on unadmitted factual allegations that did not result in a sex-offense conviction, Dykstra is correct.

Dykstra had two meetings regarding his classification. First, at a "classification or orientation" on December 15, 2005, Dykstra was told he would be required to attend SOTP. On February 16, 2006, Dykstra had a "classification hearing" at which he was presented with the SOTP refusal form and informed of the consequences if he refused SOTP. These two meetings do not meet the standards of *Wolff*. Dykstra was not provided with an opportunity to present witnesses or documentary evidence. Dykstra was not provided with written notice, or even verbal notice, of either meeting prior to when they took place. Additionally, Dykstra was provided with a generalized refusal form noting potential reasons for classification and did not receive a written statement of the specific evidence relied upon and the reasons for his own classification.

Dykstra also complains that he was not provided a sufficiently impartial decisionmaker. According to IDOC policy, the classification hearing takes place before the "Treatment Team" which includes, at a minimum, "a counselor, the Associate Warden/Security or designee, and the Associate Warden/Treatment/unit manager or designee." The record

does not indicate whether this treatment team or only one individual was present at either Dykstra's December 15, 2005 meeting or the February 16, 2006 meeting. We are unable on this record to determine whether the decisionmaker was sufficiently impartial. We have previously explained that within the prison disciplinary system a "sufficiently impartial" decisionmaker is one who is not "personally involved in the incident for which discipline is sought or in prior disciplinary actions against the inmate." *Williams v. State*, 421 N.W.2d 890, 895 (Iowa 1988). Here, the IDOC employee making the SOTP recommendation should not be one of the decisionmakers determining whether the unadmitted factual allegations against the inmate are true.

The State argues Dykstra's classification should be upheld regardless of whether he was entitled to additional protections regarding the factual circumstances of the simple assault because IDOC could have relied solely on Dykstra's prior sex offense conviction for indecent exposure, a sex-offense. IDOC may have been entitled to rely on Dykstra's prior conviction to determine that he was "required" to participate in SOTP, without providing any additional process.[6] Dykstra was afforded constitutionally adequate procedural protections in the form of criminal procedures for his previous sex offense convictions. Courts have held that inmates currently serving sentences for sex

---

[6]Reliance on convictions prior to 2001 to classify an inmate serving a sentence for a crime committed after January 2, 2001 does not violate the . This court has upheld sentence enhancements based on prior crimes committed before enactment of the enhancing statute as long as the offense which is subject to enhancement was committed after enactment. *See State v. DeCamp*, 622 N.W.2d 290, 294 (Iowa 2001) ("The effective date of the enhanced sentencing provisions gives the offender notice his future acts will be subject to enhanced punishment based on the prior convictions."). However, as noted above, we decline to address whether there may be limits to IDOC's discretion where prior history does not demonstrate "a problem currently suffered by the defendant relating to the need to rehabilitate the defendant or protect the community from the defendant." *Valin*, 724 N.W.2d at 447.

offenses are not entitled to any additional procedures prior to being classified as required to participate in SOTP. As the Ninth Circuit has explained,

> An inmate who has been convicted of a sex crime in a prior adversarial setting, whether as the result of a bench trial, jury trial, or plea agreement, has received the minimum protections required by due process. Prison officials need do no more than notify such an inmate that he has been classified as a sex offender because of his prior conviction for a sex crime.

*Neal,* 131 F.3d at 831. In *Holm* we did not require IDOC to provide the specific procedural protections identified in *Wolff* for the initial classification. *Holm,* 767 N.W.2d at 417–18. Holm was convicted and currently serving a sentence for a sex offense and therefore received due process during the criminal process. It was "undisputed that [Holm] was convicted of third-degree sexual abuse in violation of Iowa Code section 709.4" and was serving a sentence for this offense. *Id.* at 412, 418. Sex-offense convictions provide due process and Holm—unlike Dykstra—had entered prison to serve a sentence for a sex-offense conviction. *Id.* at 412.

Even if IDOC were entitled to rely solely on Dykstra's prior sex offense conviction, IDOC's actual reliance on the unadmitted factual allegations surrounding the simple assault cannot be considered harmless error. Federal courts have applied harmless error analysis to procedural irregularities in prison disciplinary proceedings. *See Howard v. U.S. Bureau of Prisons,* 487 F.3d 808, 813 (10th Cir. 2007); *Piggie v. Cotton,* 344 F.3d 674, 678 (7th Cir. 2003); *Elkin v. Fauver,* 969 F.2d 48, 53 (3d Cir. 1992). As the Second Circuit explained,

> If a person may be convicted and obliged to serve a substantial prison sentence notwithstanding a constitutional error determined to be harmless, surely the conditions of

> confinement of a sentenced prisoner may be made temporarily more severe as discipline for a prison rules infraction despite a harmless error in adjudicating the violation.

*Powell v. Coughlin,* 953 F.2d 744, 750 (2d Cir. 1991) (citations omitted). We agree that harmless error analysis applies to procedural due process errors in the sex offender classification process. *Cf. Kelly v. Nix,* 329 N.W.2d 287, 293 (Iowa 1983) (holding expungement of disciplinary infraction unnecessary where procedural irregularity was insubstantial and nonprejudicial).

Within the context of criminal trials, "[a]n error of constitutional magnitude does not mandate a new trial if the error was harmless beyond a reasonable doubt." *State v. Boley,* 456 N.W.2d 674, 678 (Iowa 1990); *see also Chapman v. California,* 386 U.S. 18, 24, 87 S. Ct. 824, 828, 17 L. Ed. 2d 705, 710–11 (1967). We note, however, that the standard for prison administrative decisions is "some evidence" as opposed to the "beyond a reasonable doubt" required in criminal trials. *See Wilson v. Farrier,* 372 N.W.2d 499, 501 (Iowa 1985) ("We hold that the requirements of due process are satisfied if some evidence supports the decisions by the prison disciplinary board to revoke good time credits."). We find guidance from this court's explaination of the harmless error analysis in the context of nonconstitutional errors, which asks: " ' "Does it sufficiently appear that the rights of the complaining party have been injuriously affected by the error or that he has suffered a miscarriage of justice?" ' " *State v. Paredes,* 775 N.W.2d 554, 571 (Iowa 2009) (quoting *State v. Sullivan,* 679 N.W.2d 19, 29 (Iowa 2004)). We reverse unless the record affirmatively establishes there was no prejudice. *Id.*

Here, we cannot hold the error was harmless. At argument before this court, the State conceded that IDOC relied primarily on the factual allegations regarding Dykstra's simple assault conviction. The IDOC reception report does not explain whether Dykstra's sex offense conviction for indecent exposure approximately twenty years prior would alone cause IDOC to require Dykstra to participate in SOTP. Iowa Code section 903A.2 vests discretion in IDOC to require SOTP and because we cannot say how IDOC would have exercised its discretion in the absence of the facts surrounding the simple assault conviction, we hold Dykstra's classification violated due process. *Cf. State v. Martens*, 569 N.W.2d 482, 485 (Iowa 1997) ("[T]he validity of a verdict based upon facts legally supporting one theory for conviction of a defendant does not negate the possibility of a wrongful conviction of a defendant under a theory containing legal error."). We remand to the district court for determination of what, if any, remedy is required.

**E. Polygraph.** Dykstra also argues IDOC's reliance on a polygraph examination violated his due process rights. The polygraph examination focused on the circumstances of the simple assault. We hold today in *Reilly v. Iowa District Court*, ___ N.W.2d ___ (Iowa 2010), that polygraph examinations are permissible when used by IDOC as part of treatment. However, IDOC cannot substitute polygraph examinations for the procedural protections required by *Wolff. Cf. State v. Conner*, 241 N.W.2d 447, 458–59 (Iowa 1976) (holding polygraph examinations inadmissible at trial based on considerations of fairness and reliability).

We decline to hold the Federal and State Due Process Clauses require a per se rule excluding polygraph examinations in all prison classification hearings. Prison proceedings "are sui generis, governed by neither the evidentiary rules of a civil trial, a criminal trial, nor an

administrative hearing. The only limitations appear to be those imposed by due process, a statute, or administrative regulations." 2 Michael B. Mushlin, *Rights of Prisoners* § 9.20, at 208 (3d ed. 2002). Although we have exercised our supervisory authority over the rules of procedure and evidence to prohibit the use of unstipulated polygraph examinations in Iowa courts, *Conner*, 241 N.W.2d at 459–60, our holding in *Conner* does not automatically extend to all prison hearings because it was not based on due process grounds. To the extent *Bradley v. State*, 473 N.W.2d 224, 226 (Iowa Ct. App. 1991), suggests otherwise, it is overruled.[7]

Prison classification hearings take place "in a closed, tightly controlled environment" and we do not automatically apply all procedural rules "to the very different situation" of prison hearings. Wolff, 418 U.S. at 560–61, 94 S. Ct. at 2977, 41 L. Ed. 2d at 953–54. In *Lenea v. Lane*, 882 F.2d 1171 (7th Cir. 1989), the Seventh Circuit declined to hold that admission of polygraph examinations in disciplinary hearings necessarily violates an inmate's due process rights. 882 F.2d at 1174. The court explained that due process rights are circumscribed by institutional needs and objectives in the prison context and "polygraphs may corroborate vital testimony or other evidence" or even provide exculpatory evidence. *Id.*; s*ee also Varnson v. Satran*, 368 N.W.2d 533, 538 (N.D. 1985) ("[W]e are not persuaded that due process under the Fourteenth Amendment or our State Constitution forbids, under all circumstances, a prison disciplinary committee or parole board from considering the results of a polygraph examination.").

---

[7]We do not address or overrule the specific holding of *Bradley*, which prohibited a prison disciplinary committee from relying on an inmate's refusal to submit to a polygraph examination. 473 N.W.2d at 226. Nor do we address the potential implications of the right against self-incrimination.

Although due process does not prohibit use of polygraph examinations in all contexts, there may be circumstances where use of a polygraph examination would likely violate a prisoner's due process rights. In *Lenea*, the Seventh Circuit agreed with the district court's determination that an inmate's guilt in a disciplinary proceeding could not be determined based solely on a failed polygraph examination and that the polygraph examination was relevant only on the question of the inmate's credibility. *Lenea*, 882 F.2d at 1176. The court also noted that in any particular case, "the threshold question . . . will be the exam's reliability, which necessarily will entail a detailed inquiry into polygraph examinations." *Id.* (citation omitted). Similarly, in *Varnson*, the North Dakota Supreme Court held admission of the particular polygraph results did not violate due process, but emphasized that the examination was administered voluntarily, the inmate had indicated he would rely on the polygraph results, and the factfinder had relied on other evidence of the inmate's guilt. *Varnson*, 368 N.W.2d at 538 (stating that if prison officials "were basing disciplinary decisions or parole-release determinations solely on the results of polygraph examinations, we would have serious reservations about the propriety of such a procedure").

We therefore leave the decision to admit polygraph evidence at a classification hearing to the discretion of IDOC. As discussed above, this discretion is bounded by the limits of due process. There may be relevant factors which would influence our decision regarding the constitutionality of IDOC's reliance on a polygraph in a particular case, including reliability, qualifications of the polygraph administrator, the particular purpose for which the polygraph is admitted, and whether the inmate submitted to the polygraph voluntarily. IDOC likely cannot

replace procedural protections with a polygraph examination or rely solely on a polygraph examination without violating due process.

### IV.    Conclusion.

IDOC's requirement that Dykstra participate in SOTP and the determination that his ability to accrue earned time be stopped under Iowa Code section 903A.2 did not violate the Ex Post Facto Clause and was statutorily authorized.  Dykstra was, however, deprived of due process because the IDOC relied on unadmitted factual allegations in reaching the decision to require Dykstra's participation in SOTP but did not provide the necessary procedural protections of *Wolff v. McDonnell.* Because IDOC violated Dykstra's due process rights, we remand to the district court for consideration of the appropriate remedy.

**WRIT SUSTAINED.**