# IN THE COURT OF APPEALS OF IOWA

No. 13-2042
Filed February 11, 2015

**DONZELL LINDSEY,**
     Applicant-Appellee/Cross-Appellant,

**vs.**

**STATE OF IOWA,**
     Respondent-Appellant/Cross-Appellee.
_____

Appeal from the Iowa District Court for Johnson County, Marsha A. Bergan, Judge.


The State appeals from the district court's grant of Donzell Lindsey's application for postconviction relief, and Lindsey cross-appeals. **AFFIRMED ON APPEAL, REVERSED ON CROSS-APPEAL.**

Thomas J. Miller, Attorney General, and Forrest Guddal, Assistant Attorney General, for appellant/cross-appeellee.

Mark Smith, State Appellate Defender, Patricia Reynolds, Assistant Appellate Defender, and Angela O'Kane, Student Legal Intern, for appellee/cross-appellant.


Heard by Vogel, P.J., and Vaitheswaran and Potterfield, JJ.

**VAITHESWARAN, J.**

We must decide whether the Iowa Department of Corrections has authority to refer an inmate to its sex offender treatment program where the district court did not make a finding that the crimes to which he pled guilty were sexually motivated.

### I. Procedural Background

The State and Lindsey stipulated to the pertinent procedural history. The State charged Lindsey with first-degree burglary, domestic assault (second offense) and third-degree sexual abuse. Lindsey pled guilty to second-degree burglary, in violation of Iowa Code sections 713.1 and 713.5 (2009), and domestic abuse assault, second offense, in violation of section 708.2A(1) and (3)(a). The State dismissed the sexual abuse charge. The district court did not make a finding that the crimes to which Lindsey pled guilty were "sexually motivated" for purposes of the sex offender registration requirements and did not require Lindsey to register as a sex offender for this case. *See* Iowa Code § 692A.126.

On Lindsey's confinement, the director of the Iowa Department of Corrections sex offender treatment program, Gail Huckins, notified Lindsey she had reviewed his crime and determined there was a "sexual component" which required referral to an administrative law judge for a determination as to whether Lindsey needed to participate in the Sex Offender Treatment Program. Following an unreported hearing, the administrative law judge ordered participation in the program.

Lindsey filed an application for postconviction relief challenging the decision. At a hearing on the application, Huckins identified several groups of inmates as suitable candidates for the sex offender treatment program: (1) inmates convicted of sex offenses, (2) inmates with completely nonsexual crimes who acted out sexually in prison, and (3) inmates having "sexual components" to their offenses. She placed Lindsey in the third category. Her testimony was consistent with the parties' stipulation concerning the reason for the referral.

The district court preliminarily concluded the department had "the authority—subject to a due process hearing—to direct an offender in Lindsey's shoes to complete [the sex offender treatment program], despite the fact that the offender is not convicted of a sex offense." The court nonetheless granted Lindsey's postconviction relief application after concluding the administrative law judge inappropriately applied a "harmless error analysis" and "went outside the record provided to him for the hearing without notice to Lindsey before the hearing," thereby violating Lindsey's due process rights. The court vacated the decision and ordered the State to "restore the earned time credits (if any there be) of [Lindsey] retroactive to the date on which earned time credit accrual was suspended."

The department appealed and Lindsey cross-appealed. In our view, the cross-appeal issue is dispositive: whether the department has the authority to determine if Lindsey's offenses were sexually motivated for purposes of referral to the sex offender treatment program. Accordingly, we find it unnecessary to address the department's appeal issues.

**II. Authority for Referral**

Lindsey bases his cross-appeal on the interplay between two statutes: Iowa Code chapter 903A, governing reduction of sentences, and Iowa Code chapter 692A, governing the sex offender registry.

Chapter 903A allows inmates to earn reductions of their sentences based on their conduct in prison. Iowa Code § 903A.2(1)(a) (2013). For sentences like Lindsey's second-degree burglary sentence, the reduction is "equal to one and two-tenths days for each day the inmate demonstrates good conduct and satisfactorily participates in any program or placement status identified by the director to earn the reduction." *Id.* Pertinent to this appeal, "an inmate required to participate in a sex offender treatment program shall not be eligible for a reduction of sentence unless the inmate participates in and completes a sex offender treatment program established by the director." *Id.* at § 903A.2(1)(a)(5).

Iowa Code section 692A.103(1) requires a person to register as a sex offender if the person has "been convicted of any sex offense classified as a tier I, tier II, or tier III offense." The statute lists as a tier III offense "[b]urglary in the second degree in violation of section 713.5, if a determination is made that the offense was sexually motivated pursuant to section 692A.126." Iowa Code § 692A.102(1)(c)(19). Section 692A.126, in turn, authorizes registration only if "a judge or jury makes a determination, beyond a reasonable doubt, that any of the following offenses for which a conviction has been entered on or after July 1, 2009, are sexually motivated" including "[b]urglary in the second degree in violation of section 713.5." Sexually motivated" means "one of the purposes for commission of a crime is the purpose of sexual gratification of the perpetrator of

the crime." Iowa Code § 692A.101(29) (defining term as it is defined in Iowa Code section 229A.2). Before July 1, 2009, this determination was vested with the department of public safety. *See* Iowa Code §§ 692A.1, .2 (2007) (repealed by 2009 Iowa Acts Ch. 119, section 31).

Lindsey essentially asserts he was not an inmate "required to participate in a sex offender treatment program" because the district court declined to make the finding necessary to classify him as a sex offender subject to the registry requirements of chapter 692A and the Iowa Department of Corrections lacked authority to make the finding in the district court's stead. The department counters that "the requirements of either chapter are not necessarily contingent on the other, and the district court correctly determined that the absence of a duty to register on the [sex offender registry] does not preclude [the department's] requirement of [sex offender treatment program] participation by Lindsey."

We have no quarrel with the department's argument, in principle. We can envision circumstances in which the department may have authority to refer an inmate to the sex offender treatment program whether or not the inmate was required to register as a sex offender under chapter 692A. Huckins cited one such circumstance—sexual misconduct within the prison. But that is not the circumstance on which Huckins or the department relied in referring Lindsey for treatment. The department stipulated the referral was made on the basis of the "sexual component" to his crime. The key question, then, is whether there was a sexual component to the crimes for which Lindsey was convicted.

Because the crimes were not facially sexual, there had to be some finding they were sexual. The district court made no such finding under chapter 692A or otherwise. The department attempted to make the finding after the fact, relying on references to sexual misconduct contained in the minutes of testimony. These references, however, were not a predicate to a finding of guilt on either the burglary or domestic abuse assault charges. The references may have supported the sex-abuse charge but, as noted, that charge was dismissed. The allegations of sexual misconduct contained in the minutes were "facts" in name only-unadmitted and unproven.[1] If the department intended to base the referral on the "sexual component to the crime," there had to be an admitted or otherwise established sexual component to the crime. There was none here. *See Oldenkamp v. Iowa Dep't of Pub. Safety*, No. 10-2076, 2011 WL 5395062, at *7– 8 (Iowa Ct. App. Nov. 9, 2011) (finding minutes inadequate to establish predicate to placement on registry based on victim's age because "[a]lthough the minutes of testimony identify the victim as a minor, they do not constitute a sentencing or adjudicatory order" and "minutes of testimony are 'simply ex parte statements of certain witnesses, and hearsay.'"); *cf. State v. De Bont*, 273 N.W. 873, 874 (Iowa 1937) (noting minutes of witnesses who appeared before grand jury "are not evidence for any purpose except when introduced to impeach the testimony of some witness who testified before the grand jury and later in a trial gives contrary evidence," and it was "highly prejudicial" to allow consideration of minutes by jury

---

[1] The department cites Iowa Code section 904.602(2)(n) for the proposition that the department is authorized to consider minutes of testimony. This provision simply holds pretrial information not otherwise available to the public "*is* confidential *and shall not be disseminated by the department.*" (Emphasis added.).

because "[i]t was as though there were twelve witnesses appearing before the jury without being sworn and without the appellant having a right to cross-examine said witnesses").

The department nonetheless asserts it possessed authority to make the necessary finding where the district court did not. The department relies on *Dykstra v. Iowa District Ct.*, 783 N.W.2d 473 (Iowa 2010). Like Lindsey, Dykstra argued the department "could not require him to participate in the [sex offender treatment program] because he was not convicted of a 'sex offense' and was not serving a sentence for a sex-related crime when his ability to accrue earned time was revoked." *Dykstra*, 783 N.W.2d at 478. The court concluded the department had "statutory authority to rely on a current conviction for a non-sex offense when the underlying facts are of a sexual nature." *Id.* at 479–80. The court allowed the department to find the facts pursuant to its "broad discretion" to "develop policy and procedural rules to implement" criteria for which inmates will be "required to participate" under section 903A.2(1)(a). *Id.* at 478–79.

We agree *Dykstra* empowers the department to adopt policies and rules and to sanction prisoners' non-compliance with those policies and rules by withholding good time credit. *See* Iowa Code § 903A.4. But *Dykstra* does not extend this authority to promulgation of policies and rules permitting the consideration of unproven and unadmitted "facts." Indeed, the *Dykstra* court expressed specific concern about the department's reliance on "unadmitted factual allegations surrounding the simple assault." *Id.* at 484–85.

Significantly, even district courts may not rely on these types of "facts." *See De Bont*, 273 N.W. at 874. *See also State v. Sailer*, 587 N.W.2d 756, 762

(Iowa 1998) (prohibiting court from relying "upon 'additional, unproven, and unprosecuted charges' when no facts before the court show the charges are valid and the defendant does not admit the additional charges"); *State v. Gonzalez*, 582 N.W.2d 515, 517 (Iowa 1998) ("Where portions of [the minutes of testimony] are not necessary to establish a factual basis for a plea, they are deemed denied by the defendant and are otherwise unproved and a sentencing court cannot consider or rely on them."); *State v. Black,* 324 N.W.2d 313, 315–16 (Iowa 1982) (same as *Sailer)*. The department should not be allowed to utilize information a district court would plainly be forbidden from considering.

Our conclusion that the department may not adopt rules or policies permitting the consideration of unadmitted and unproven facts in referring an offender to a sex offender treatment program is bolstered by *State v. Valin*, 724 N.W.2d 440 (Iowa 2006). There, a defendant convicted of operating a motor vehicle while intoxicated objected to special terms of probation, including a requirement he undergo sex offender treatment. *Valin*, 724 N.W.2d at 442. The department justified the requirement on the basis of a prior conviction for assault with intent to commit sexual abuse. *Id.* The district court ordered Valin to undergo sex offender treatment. *Id.* at 443. On appeal, the Iowa Supreme Court concluded there was "an insufficient nexus between Valin's present conviction and his special conditions of probation to advance the goals of probation." *Id.* at 447. The court stated,

> [t]he reasonableness of sex abuse treatment as a condition of probation for an unrelated crime of conviction must be supplied by the individual facts or evidence in each case. The DCS policy [requiring all probationers with a prior sex abuse conviction to participate in sex abuse treatment] paints with a brush that is too

broad, and covers all defendants with a prior record of conviction for sex abuse, without individually considering the actual or current need for rehabilitation or public protection.

*Id.* at 448. *See also Waters v. Iowa Dist. Ct.*, 783 N.W.2d 487, 489 (Iowa 2010) (leaving open whether the discretion of the department would be limited if there were no "problem currently suffered," but finding Waters "entered prison to serve two sentences: the five-year OWI sentence and a two-year sentence for assault with intent to commit sexual abuse."); *State v. Stringer*, No. 13-0579, 2014 WL 250252, at *2 (Iowa Ct. App. Jan. 23, 2014) (reversing district court order requiring sex offender treatment as term of probation for prostitution conviction where defendant "had been accused of rape on two occasions but "one of those charges was dismissed completely and the other one was dropped down to false imprisonment" and it could not be said the thirty-year-old false imprisonment conviction stemmed from a sexual encounter.).

The department painted with an even broader brush in Lindsey's case. The department made the referral for sex offender treatment without the benefit of any rules or policies to circumscribe its discretion. *See* Iowa Code § 903A.4 (requiring department to develop policy and procedural rules to implement statute); *Dykstra,* 783 N.W.2d at 479 (same). At the time of the referral, the department's rule titled "Sex Offender Risk Assessment" had been rescinded. Iowa Admin. Code r. 201-38.3 (2013). The former version required the department to conduct a sex offender risk assessment upon

> every offender under each agency's authority who is required to register under Iowa Code chapter 692A on or after July 1, 2005, who has committed a criminal offense against a minor, or an aggravated offense, sexually violent offense, or other relevant offense that involved a minor in this state or in another state, or in a

federal, military, tribal, or foreign court, or on a person required to register in another state under the state's sex offender registry. The risk assessment should be completed within 45 days prior to the offender's release from custody or upon the offender's placement on probation, parole, or work release.

Iowa Admin. Code r. 201-38.3 (2009). Under the former rule, Lindsey could not have been required to undergo a sex offender risk assessment because he was not required to register under Iowa Code chapter 692A. The department failed to implement other rules which would have required a referral to sex offender treatment under his circumstances. *See* Iowa Admin. Code r. 201-38.2, .4 (2013) (applicable only to electronic monitoring of sex offenders and hormonal intervention therapy). Additionally, the department has pointed us to no policies in effect at the time Lindsey was referred to the program which authorized a referral based on a "sexual component" to the crime.[2]

In short, the department referred Lindsey to the sex offender treatment program notwithstanding the absence of any statute, rule, or policy supporting such a referral and notwithstanding the absence of a finding by the criminal court of a sexual component to any of the crimes for which he was convicted. Lindsey could not be required to participate in a sex offender treatment program for a crime lacking a sexual component. If that were the case, any inmate convicted of any crime could be required to undergo sex offender treatment.

---

[2] Policy number OP-SOP-08, which came into effect later, requires the department to review and refer offenders who "are not incarcerated for a Sex Crime but have a sexual component to their crime" to the sex offender treatment program director. Iowa Dep't of Corr., OP-SOP-08, Sex Offender Program Referrals (2014), *available at* http://www.doc.state.ia.us/Policies. The director will then review the "current conviction and circumstances of [the] offense" as well as the "minutes of testimony/court documents" and "prior arrests/convictions" to determine if the offender will be placed into a sex offender treatment program. *Id.*

Because the department lacked statutory, rule, or policy authority to make a finding that Lindsey's current convictions contained a sexual component, it could not refer Lindsey to the sex offender treatment program based on a "sexual component" to his crime, even if the referral was subject to a due process hearing before an administrative law judge.

We recognize the administrative law judge "ha[d] the full authority to . . . receive in evidence the testimony of witnesses and any documents which are relevant and material." Iowa Admin. Code r. 481-10.20(7)(e). However, the judge could not consider the minutes for the same reason Huckins could not and the district court could not—the sexual component allegation related to a dismissed charge. *See De Bont*, 273 N.W. at 874. *See also Goodwin v. State*, 585 N.W.2d 749, 753 (Iowa Ct. App. 1998) (holding administrative law judge's reliance on dismissed charge was abuse of discretion).

We affirm the district court's reversal of the department of corrections decision but on the alternate ground raised by Lindsey—the department lacked authority to refer Lindsey to the sex offender treatment program in the first instance.

**AFFIRMED ON APPEAL, REVERSED ON CROSS-APPEAL.**

Potterfield, J., concurs; Vogel, P.J., dissents.

**VOGEL, P.J.** (dissenting)

I respectfully dissent from the majority's conclusion the Iowa Department of Corrections (IDOC) did not have the authority to refer Lindsey to the sex offender treatment program (SOTP). I agree that IDOC cannot rely on unproven factual allegations when requiring an inmate to participate in SOTP. However, I disagree with the conclusion that, even following a hearing before an independent factfinder—unless the inmate admitted or the district court found that the underlying facts of the crime were sexually motivated—IDOC cannot ultimately require participation in SOTP. Rather, I would conclude IDOC can rely on unadmitted-to facts when initially *referring* an inmate to SOTP, but, then, due process requires a hearing before an independent factfinder before participation in SOTP is *required*. This holding, I believe, is consistent with *Dykstra v. Iowa Dist. Ct.*, 783 N.W.2d 473 (Iowa 2010).

Our supreme court has held that, even when an inmate is not convicted of a crime involving a sexual element, pursuant to chapter 903A, the IDOC may nonetheless refer an inmate to SOTP. *Dykstra,* 783 N.W.2d at 479. Specifically: "IDOC has statutory authority to rely on a current conviction for a non-sex offense when the underlying facts are of a sexual nature." *Id.* at 479–80. Though the *Dykstra* court did not examine the intersection between chapter 903A and section 692A.126, its holding clearly states IDOC has the authority to examine the underlying factual basis of the crime, regardless of the actual statutory conviction. *Id.* This holding, therefore, implies IDOC is permitted to examine the minutes of testimony when initially deciding whether or not to refer an inmate to

SOTP, regardless of whether the inmate admitted that the sexual-component allegations were true.

Nonetheless, the majority is correct that *Dykstra* held participation in SOTP cannot be required on the basis of unadmitted or unproven facts. Specifically, the *Dykstra* court held that, because there is a protected liberty interest in good time credits, procedural protections are required before an inmate can be required to participate in SOTP. *Id.* at 483. Thus, due process requires "advance written notice, a written statement of reasons and findings by the factfinder, and a neutral factfinder." *Id.* That is the procedure that was followed here. Huckins reviewed the minutes of testimony and then referred Lindsey to the administrative law judge (ALJ). A hearing was held in which Lindsey presented his own evidence, and in a written opinion, the ALJ determined Lindsey's convictions had underlying facts of a sexual nature; consequently, Lindsey was required to participate in SOTP. Under *Dykstra*, the proper procedures were followed, and Lindsey's due process rights were satisfied. *See id.*; *see also Office of Citizens' Aide/Ombudsman v. Edwards*, 825 N.W.2d 8, 16 (Iowa 2012) ("Our review of the governing statutes confirms IDOC ALJs are to be independent and impartial adjudicators performing a quasi-judicial role in prison disciplinary cases.").

With these procedural safeguards in place, I would conclude that, despite the fact Lindsey was not convicted of a crime with a sexual element, and the trial court made no finding his crime was sexually motivated, IDOC nonetheless had the authority to order him to participate in SOTP, particularly given the fact that his due process rights were satisfied. *See Dykstra,* 783 at 485 (stating "Iowa

Code section 903A.2 vests discretion in IDOC to require SOTP."). I would therefore affirm on the cross-appeal.[3]

---

[3] Although the State's appeal was not addressed in the majority, I would conclude the district court was correct in its holding that, pursuant to *Dykstra*, the ALJ is required to perform an independent determination regarding whether the inmate's classification is appropriate under a "standard of proof" analysis, and the "harmless error analysis" is only applicable to a procedural due process challenge.