# IN THE SUPREME COURT OF IOWA

No. 99 / 05-0781

Filed December 1, 2006

**STATE OF IOWA,**

Appellee,

vs.

**CHRISTOPHER LAWRENCE VALIN,**

Appellant.

_____

Appeal from the Iowa District Court for Polk County, Cynthia M. Moisan, Judge.

Appeal from conditions of probation. **REVERSED.**

Linda Del Gallo, State Appellate Defender, and Shellie Knipfer, Assistant State Appellate Defender, for appellant.

Thomas J. Miller, Attorney General, Sheryl A. Soich, Assistant Attorney General, John P. Sarcone, County Attorney, and Ramonda Belcher Ford, Assistant County Attorney, for appellee.

**CADY, Justice.**

In this appeal we must decide if special conditions of probation not directly related to the crime of conviction, but related to a prior conviction, may be imposed as a part of a sentence. We reverse the decision of the district court.

## I. Background Facts and Proceedings.

Christopher Valin was convicted of operating while intoxicated (OWI), second offense, following his arrest in September of 2004. In April 2005, the district court sentenced Valin to a term of imprisonment not to exceed two years and suspended all but seven days of the term. The court imposed a fine of $1500, and placed Valin on probation for two years. He was also required to undergo a substance abuse evaluation and treatment program, and attend a weekend class offered by the Des Moines Area Community College for OWI offenders. Valin was placed under the supervision of the department of correctional services (DCS). The sentencing order specifically required Valin to "submit to the supervision of DCS during probation and . . . comply with all terms imposed by the assigned probation officer, including any additional programs and classes not set forth herein." Valin filed a notice of appeal on May 10, 2005.

Valin signed a DCS probation agreement on May 19, 2005. It contained several standard rules and conditions, but also contained the following "special conditions":

> 401. I shall participate in a sex offender or mental health counseling program as directed by my supervising officer.

> 403. I shall successfully complete the Fifth Judicial District Department of Correctional Services Sex Offender Treatment Program and comply with any treatment recommended as a result of the program.

404. I shall not initiate, establish, or maintain contact with victim(s) unless approved by my supervising officer.

405. I shall not initiate, establish, or maintain contact with any minor child (under the age of 18) unless approved by my supervising officer.

406. I shall not initiate, establish, or maintain contact with my children unless approved by my supervising officer.

408. I shall not reside with my children unless approved by my supervising officer.

409. I shall avoid any verbal or physical contact with any child or groups of children. I shall avoid contact with establishments, groups or organizations whose primary purpose is the care of minor children unless I have the prior written approval of my supervising officer.

411. I shall not be in possession of any sexually explicit materials, videos, books, magazines, pictures, posters, letters, etc., without express written approval from my supervising officer and a sex offender treatment team.

412. I will not subscribe, nor will I attempt to access, to the internet without prior approval from my supervising officer. I also will not engage in or visit computer-generated chat rooms under any circumstances. [Handwritten:] internet banking, check email-ONLY

801. I shall participate in the Fifth Judicial District Department of Correctional Services Sex Offender Treatment Program unless my supervising officer determines otherwise.

Valin objected to the special terms of probation and filed a motion in the district court for the court to "determine" the terms of his probation.[1] Valin primarily objected to the requirement that he undergo

---

[1]Even though Valin had already filed his original notice of appeal for his conviction, the district court did not lose jurisdiction to determine the terms of his probation. *See State v. Mallett*, 677 N.W.2d 775, 776–77 (Iowa 2004) ("Generally, an appeal divests a district court of jurisdiction. Restoration of district court jurisdiction may be accomplished by only two means: the litigants' stipulation for an order of dismissal or an appellate court's order for limited remand. Neither means applies here. Moreover, a district court maintains jurisdiction over disputes between the parties that are merely collateral to the issues on appeal. An example of a collateral matter as to which a trial court retains jurisdiction is the modification of an order for restitution in a criminal case." (citing *State v. Jose*, 636 N.W.2d 38, 46 (Iowa 2001); *Shedlock v. Iowa Dist. Ct.*, 534 N.W.2d 656, 658 (Iowa 1995))). However, a statute "may authorize the

sex offender treatment. At a hearing on the motion, the DCS justified the special conditions based on Valin's conviction in 1999 for assault with intent to commit sexual abuse. The offense arose from an incident when Valin was in college during a night of excessive consumption of alcohol. Specifically, Valin fondled and groped the breasts and vaginal area of an adult female student without her consent after the two ended up at an apartment. Valin was placed on probation following the conviction and was required to complete sex offender treatment. Valin successfully completed the treatment, and was discharged from probation in 2001. Notwithstanding, the DCS recommended Valin complete sex offender treatment again because the DCS had a policy that required such treatment and special terms of probation when persons have previously been convicted of a sex offense. The policy is based on the proposition that a person who has committed a sex offense always has the potential to commit a sex offense again in the future.[2] The treatment begins with a relapse assessment, which allows the DCS to "assess how much [the defendant has] learned in previous treatment." The relapse assessment is followed by after-care treatment or more aggressive treatment, depending upon the results of the relapse assessment.

---

trial court to enter further orders notwithstanding the taking of an appeal." 5 Am. Jur. 2d *Appellate Review* § 421, at 171 (1995); *accord United States v. D'Amario*, 412 F.3d 253, 255 (1st Cir. 2005) ("[T]he district court has plenary jurisdiction to supervise a convicted defendant's release, including the jurisdiction to modify the conditions of supervised release, even though an appeal from a revocation of supervised release may be pending."); *see* Iowa Code § 907.8 (2005) (stating jurisdiction over persons on probation "shall remain with the sentencing court").

[2]At the hearing, the probation officer stated, "Our philosophy is that once they've committed a sex crime, they always have the potential to commit another one." In addition, the district court noted it was the DCS's policy to require sex offender treatment "when a person has committed a sex offense in the past and is later convicted of another offense—whether or not the later offense is a sex crime."

After the hearing to determine the terms of Valin's probation, the court entered an order requiring Valin to comply with all terms except one. Because there did not "appear to be any 'evidence' that would require a limitation of [Valin's] contact with minor children," the court permitted Valin "to have contact with minor children unless a psychological evaluation or other testing" indicated otherwise. However, the court held Valin must complete his sex offender treatment. It found the sentencing order clearly stated Valin must submit to the supervision of the DCS, it was in the best interests of the community for Valin to undergo treatment, and there was a strong nexus between Valin's substance abuse and his criminal activity. Valin then filed a second notice of appeal on July 19, 2005.

Following the hearing, the DCS required Valin to submit to a penile plethysmograph (PPG) test as part of his relapse assessment. This test measures deviant sexual arousal. It requires the subject to place a gauge on his penis while he is shown images and told sexual stories. The gauge then records computerized results based on the subject's responses to the visual and audio stimuli. It takes anywhere between ninety minutes and two hours to complete, and the defendant must contribute $250 for the procedure. Typically, the DCS requires a PPG the first time a defendant receives sex offender treatment in order to determine if the offender has any other paraphilias, or areas of sexually deviant arousal. Such a test is then usually relied upon by the DCS during the probationer's participation in relapse assessment. Valin, however, was not given this procedure during his first treatment because the DCS did not have a sufficient budget at the time to perform the test. As a result, the DCS wanted to perform it now, during his relapse

assessment, to help evaluate other possible areas of sexual deviancy and to specifically determine whether Valin should be allowed contact with minor children, including his own newly born child.

Valin refused to submit to the PPG test and requested a hearing before the district court. The hearing revealed that Valin successfully completed the prior treatment program. Furthermore, there was no evidence presented that Valin had engaged in any sexually deviant behavior following his prior conviction, or had ever engaged in any inappropriate contact with children, although the use of alcohol was identified during his prior sex abuse treatment as a potential relapse factor. Nevertheless, the court required Valin to submit to the PPG test as a part of his treatment program. Although the court found no evidence that he was a threat to his child, it required that visitation with the child be supervised pending the outcome of the sex offender treatment.

All three of his appeals have been consolidated. The issue on appeal is whether Valin is subject to his special conditions of probation, including the PPG test.

## II.  Standard of Review.

We have articulated two different standards of review when a defendant challenges his or her sentence on appeal. Depending upon the nature of the challenge, the standard of review is for the correction of errors at law or for an abuse of discretion. *Compare State v. Freeman*, 705 N.W.2d 286, 287 (Iowa 2005) ("We review the district court's sentence for correction of errors at law." (citing *State v. Kapell*, 510 N.W.2d 878, 879 (Iowa 1994); Iowa R. App. P. 6.4)), *and State v. Shearon*, 660 N.W.2d 52, 57 (Iowa 2003) (noting that the appellant challenged "the

legality of his sentencing," and that "[o]ur review is for the correction of errors at law"), *with State v. Alloway*, 707 N.W.2d 582, 584 (Iowa 2006) ("We normally review sentencing decisions for abuse of discretion." (citing *State v. Evans*, 671 N.W.2d 720, 727 (Iowa 2003))), *and State v. Jose*, 636 N.W.2d 38, 41 (Iowa 2001) (stating we review a sentence that does not fall outside the statutory limits for an abuse of discretion (citing *State v. Cooley*, 587 N.W.2d 752, 754 (Iowa 1998))), *and State v. Neary*, 470 N.W.2d 27, 29 (Iowa 1991) ("When a sentence is imposed within statutory limits, it will be set aside only for an abuse of discretion."). Ultimately, however, we review a defendant's sentence for the correction of errors at law. *See State v. Thomas*, 547 N.W.2d 223, 225 (Iowa 1996); Iowa R. App. P. 6.4. Nevertheless, in some circumstances it is necessary to determine whether legal error occurred because the district court abused its discretion. Such a circumstance occurs when the sentence imposed is within the statutory limits or the defendant's challenge to his or her sentence does not suggest it is outside the statutory limits. *See Neary*, 470 N.W.2d at 29 (noting that when the sentence imposed is within the statutory limits it is reviewed for an abuse of discretion); *Thomas*, 547 N.W.2d at 225 (noting that when "a defendant does not assert that the imposed sentence is outside the statutory limits, the sentence will be set aside only for an abuse of discretion").

In this case, Valin challenges his sentence as illegal. However, he is not challenging the district court's authority to sentence him to, *inter alia*, two years of formal probation whereby he "shall submit to the supervision of DCS during probation and shall comply with all terms imposed by the assigned probation officer, including any additional programs and classes not set forth herein." Iowa law clearly allows the

district court to do so. *See* Iowa Code § 907.3(3) (2005) (empowering the sentencing court in circumstances such as these to "place the defendant on probation upon such terms as it may require including . . . commitment of the defendant to the judicial district department of correctional services for supervision or services under section 901B.1 at the level of sanctions which the district department determines to be appropriate"). Instead, Valin is challenging the *specific* probation conditions imposed by the DCS, and approved by the district court, as unreasonable.

When a defendant challenges the terms of probation, "[i]t has long been a well-settled rule that trial courts have a broad discretion in probation matters which will be interfered with only upon a finding of abuse of that discretion." *State v. Rogers*, 251 N.W.2d 239, 243 (Iowa 1977) (citing *United States v. Alarik*, 439 F.2d 1349, 1351 (8th Cir. 1971) ("The granting of probation, and the conditions upon which it is granted as well as its revocation are matters purely within the discretion of the trial court and are reviewable only upon abuse of discretion.")). Thus, we review Valin's sentence for an abuse of discretion, and note that any abuse of discretion necessarily results in a legal error. *State v. Ogle*, 430 N.W.2d 382, 383 (Iowa 1988) (per curiam) (reviewing the probation condition that the appellant reside at a certain residential facility for an abuse of discretion); *accord United States v. Jalilian*, 896 F.2d 447, 449 (10th Cir. 1990) ("If the sentence is legal, we review probation determinations for abuse of discretion.").

Regarding an abuse of discretion standard, we have said:

> In applying the abuse of discretion standard to sentencing decisions, it is important to consider the societal goals of sentencing criminal offenders, which focus on rehabilitation of the offender and the protection of the

community from further offenses. It is equally important to consider the host of factors that weigh in on the often arduous task of sentencing a criminal offender, including the nature of the offense, the attending circumstances, the age, character and propensity of the offender, and the chances of reform. The application of these goals and factors to an individual case, of course, will not always lead to the same sentence. . . . Yet, this does not mean the choice of one particular sentencing option over another constitutes error. Instead, it explains the discretionary nature of judging and the source of the respect afforded by the appellate process.

Judicial discretion imparts the power to act within legal parameters according to the dictates of a judge's own conscience, uncontrolled by the judgment of others. It is essential to judging because judicial decisions frequently are not colored in black and white. Instead, they deal in differing shades of gray, and discretion is needed to give the necessary latitude to the decision-making process. This inherent latitude in the process properly limits our review. Thus, our task on appeal is not to second guess the decision made by the district court, but to determine if it was unreasonable or based on untenable grounds.

*State v. Formaro*, 638 N.W.2d 720, 724–25 (Iowa 2002) (citations omitted). In short, there is an abuse of discretion when "there is no support for the decision in the . . . evidence." *Rath v. Sholty*, 199 N.W.2d 333, 336 (Iowa 1972).

### III.  Applicable Law.

We have noted that "[t]he legislature has given the courts broad, but not unlimited, authority in establishing the conditions of probation." *State v. Jorgensen*, 588 N.W.2d 686, 687 (Iowa 1998) (per curiam) (citations omitted). Our courts derive this authority from Iowa Code section 907.6, which states:

Probationers are subject to the conditions established by the judicial district department of correctional services subject to the approval of the court, and any additional reasonable conditions which the court or district department may impose to promote rehabilitation of the defendant or protection of the community.

Iowa Code § 907.6.[3]  Thus, our district courts are authorized to impose "any reasonable conditions" that either "promote rehabilitation of the defendant or the protection of the community."[4]  *Jorgensen*, 588 N.W.2d at 687 (citing Iowa Code § 907.6; *State v. Akers*, 435 N.W.2d 332, 335 (Iowa 1989)); *Ogle*, 430 N.W.2d at 383 (per curiam) (stating probation conditions "shall promote the rehabilitation of the defendant and the protection of the community" and "must not be unreasonable or arbitrary"); *Rogers*, 251 N.W.2d at 243 (stating "conditions of probation cannot be unreasonable or arbitrary" and "should relate to the rehabilitation of the convicted criminal or the protection of the community, or both"); *see also* 5 Wayne R. LaFave et al., *Criminal Procedure* § 26.9(a), at 833 (2d ed. 1999) ("In order to be valid, probation conditions must be reasonably related to the offense involved, the

[3]We recognize section 907.6 does not qualify what conditions the DCS may *originally* impose.  Instead, it states "[p]robationers are subject to the conditions established," and qualifies "any additional" conditions imposed by requiring them to be "reasonable" and either "promote the rehabilitation of the defendant or protection of the community."  Iowa Code § 907.6.  It would be illogical, however, to read from this provision that the DCS may impose any conditions it wants—reasonable or not—the first time around.  After all, those conditions are "subject to the approval of the court." *Id.*  The proper construction is that *any* condition of probation must be reasonable and either rehabilitate the defendant or protect the community.  We have always required conditions of probation to meet this test.  *See, e.g.*, *Jorgensen*, 588 N.W.2d at 687.

[4]We also recognize Iowa Code section 907.7 states that the purposes of probation are "to provide maximum opportunity for the rehabilitation of the defendant and to protect the community from further offenses by the defendant and others." Notably, this provision uses the conjunctive "and," whereas section 907.6 uses the disjunctive "or."  *Compare* Iowa Code § 907.7 (stating "for the rehabilitation of the defendant *and* to protect the community" (emphasis added)), *with id.* § 907.6 (stating "to promote rehabilitation of the defendant *or* protection of the community" (emphasis added)).  Section 907.7, however, is simply recognizing the purposes of probation, and not the authority of the court to impose conditions of probation.  Thus, to be valid, conditions need not (in addition to being reasonable) promote the defendant's rehabilitation and the protection of the community, but simply one or the other, or both.  *See Rogers*, 251 N.W.2d at 243.

rehabilitation of the defendant, the protection of the public, or another legitimate punitive purpose.").

A condition of probation promotes the rehabilitation of the defendant or the protection of the community when it addresses some problem or need identified with the defendant, *see Rogers*, 251 N.W.2d at 244 ("The sentencing court's probation conditions might well be tailored to deter defendant from further offenses and thus contribute towards his rehabilitation."), or some threat posed to the community by the defendant, *see Ogle*, 430 N.W.2d at 383 (per curiam) ("As the defendant posed a threat to the community because of his willingness to drive while under the influence, the court was well within its discretion to reject the Antabuse option and to order the defendant to reside in the residential facility [as a condition of probation]."). A condition is reasonable when it relates to the defendant's circumstances in a reasonable manner, *see United States v. Friedberg*, 78 F.3d 94, 96 (2d Cir. 1996) ("A condition of probation is not reasonable if it is found to be 'unnecessarily harsh or excessive in achieving these goals [of rehabilitating the defendant and protecting the public].'" (quoting *United States v. Tolla*, 781 F.2d 29, 34 (2d Cir. 1986))), and is justified by the defendant's circumstances, *see Jorgensen*, 588 N.W.2d at 687 (finding the imposition of a batterer's education program condition unreasonable because the defendant was acquitted of domestic abuse and had no history of such conduct). Thus, the inquiry into the reasonableness of a condition of probation boils down to whether the statutory goals of probation are reasonably addressed. *See, e.g.*, *Sobota v. Willard*, 427 P.2d 758, 759 (Or. 1967) ("In testing the reasonableness of conditions imposed as part of a probation plan, it is necessary to bear in mind the various purposes sought to be

served by probation . . . ."); 21A Am. Jur. 2d *Criminal Law* § 907, at 171–73 (1998) ("[C]onditions that are found to be vindictive, vague, or overbroad, or unreasonable, will be stricken from the probation order. Moreover, conditions of probation which have no relationship to the crime of which the offender was convicted, relate to conduct which is not in itself criminal, and require or forbid conduct which is not reasonably related to future criminality, do not serve the statutory ends of probation and are invalid."). As a result, whether a condition meets the statutory goals of probation and whether it is reasonable are questions that are best addressed together.

## IV. Discussion.

Although this case involves three appeals, there is essentially one issue presented. The question is whether special conditions of probation relating to the treatment and prevention of sexual abuse can be imposed as terms of probation for a person convicted of OWI with Valin's history. In particular, Valin objects to the requirement that he participate in a sex abuse treatment program and submit to a PPG test as a part of an evaluation to determine the level of treatment and his ability to maintain contact with children.

Normally, the crime of conviction serves as the circumstance to support the conditions of probation. However, we have previously recognized that a defendant's background and history is also relevant when determining the conditions of probation. *See Jorgensen*, 588 N.W.2d at 687, 687 n.1 (striking a condition of probation because, *inter alia*, "there was no indication she had a prior history" associated with such conditions, and no evidence in the record suggested such conditions were appropriate). Other states have also recognized that a

defendant's history, as opposed to the defendant's present conviction, may form the basis for conditions of probation. *See, e.g., State v. Solomon*, 111 P.3d 12, 26 (Haw. 2005) (holding sex-offender treatment was a valid probation condition, even though the conviction was not for a sex offense, because the defendant had a history of sex-offending); *State v. Cyr*, 751 A.2d 420, 424 (Conn. Ct. App. 2000) (conviction need not be for enumerated sex offense in order to warrant sex-offender treatment as a probation condition); *Miyasato v. State*, 892 P.2d 200, 201–02 (Alaska Ct. App. 1995) ("[A] condition of probation need not directly relate to the offense for which the defendant stands convicted."). Thus, a prior conviction can provide the needed history to justify a special condition of probation. Yet, it is axiomatic that such history is insufficient unless it reveals a problem currently suffered by the defendant relating to the need to rehabilitate the defendant or protect the community from the defendant.

In this case, there is an insufficient nexus between Valin's present conviction and his special conditions of probation to advance the goals of probation. The State suggests a sufficient nexus exists for two primary reasons. First, the DCS maintains a policy that requires all probationers with a prior sex abuse conviction to participate in sex abuse treatment. The policy is based on the proposition that sex offenders always have the potential to reoffend. *See McKune v. Lile*, 536 U.S. 24, 32–33, 122 S. Ct. 2017, 2024, 153 L. Ed. 2d 47, 56–57 (2002) (observing that sex offenders who have re-entered society are "much more likely than any other type of offender to be rearrested for a new rape or sexual assault"). Second, the use of alcohol was recognized as a component of Valin's relapse cycle during his prior sex abuse treatment, which means the current

conviction gives rise to a current potential for relapse.  We address each reason separately.

The DCS policy and its rationale are too broad to establish the necessary relationship between the conditions of probation in this case and either the current needs of rehabilitation of the defendant or the current protection of the public from the defendant.  The policy gives rise to the need for the DCS to normally consider and inquire into the potential need for sex abuse treatment for a probationer, but the policy does not make treatment reasonable in each case.  The reasonableness of sex abuse treatment as a condition of probation for an unrelated crime of conviction must be supplied by the individual facts or evidence in each case.  The DCS policy paints with a brush that is too broad, and covers all defendants with a prior record of conviction for sex abuse, without individually considering the actual or current need for rehabilitation or public protection.  *See United States v. Scott*, 270 F.3d 632, 636 (8th Cir. 2001) ("The government presented no evidence that [the defendant] has a propensity to commit any future sexual offenses, or that [the defendant] has repeated this behavior in any way since his [previous] conviction.").

The problem with using the policy to establish a relationship between the conditions of probation and the goals of probation is best revealed by the other special conditions of probation imposed by the DCS in this case, such as the no-contact-with-children provision.  This condition of probation restricts Valin's contact with children, including his own child, even though he has no history of sexual assault involving children and there are no facts that give rise to a reasonable fear that such behavior could occur.  Consequently, the effect of the policy is to treat Valin as a current sex offender solely because of his prior offense.

In turn, the policy has the effect of imposing greater restrictions on an offender than reasonably needed to achieve the goals of probation. This is a consequence that probation must avoid. *See* Iowa Code § 907.9(4) ("[A] person who has been discharged from probation shall no longer be held to answer for the person's offense."). Accordingly, we turn to the second reason offered by the State.

Alcohol abuse is a common factual connection between the prior and current convictions that could support the current need for sex abuse treatment. However, the common factor of alcohol relied on by the district court in this case to justify the need for sex abuse treatment as a condition of probation is simply too tenuous. There is no evidence in the record to show the degree to which the use of alcohol is a factor of relapse into sexual abuse, or even the degree to which alcohol abuse is a current part of Valin's life. The record only establishes a conviction that shows Valin used alcohol five years after his conviction for sexual assault, which, without additional evidence, does not reasonably support the imposition of sex abuse treatment. The imposition of a treatment program based on this one common circumstance between two unrelated convictions is premature.

The record in this case shows that the sexual abuse treatment program was to begin with an evaluation to determine the level of treatment. Yet, the evaluation was not imposed to determine if treatment should be required as a condition of probation, but what level of treatment should be imposed. Thus, the condition of probation imposed on Valin was a treatment program, not an evaluation. Regardless, any condition of probation—whether a treatment term or an evaluation term—must satisfy the critical inquiry that a reasonable relationship

exists between the condition of probation and the statutory goals as related to the current situation of the probationer.  The inquiry must reveal specific evidence that such a reasonable relationship exists.

We conclude there is no reasonable relationship between Valin's required participation in the sex offender treatment program, the imposition of the other special terms of probation, and the goals of probation for Valin's current OWI conviction.  Thus, the trial court abused its discretion by imposing unreasonable special conditions of probation, and this abuse of discretion resulted in legal error.

**V.  Conclusion.**

We conclude the district court abused its discretion by ordering the special conditions of probation, as well as the requirement that Valin submit to the PPG.  Therefore, we reverse the decision of the district court that imposed the special conditions of probation, including the PPG test, without prejudice to the State to impose additional terms and conditions of probation in the future.

**REVERSED.**

All justices concur except Hecht, J., who takes no part.