# IN THE COURT OF APPEALS OF IOWA

No. 16-1722
Filed September 27, 2017

**STATE OF IOWA,**
        Plaintiff-Appellee,

**vs.**

**QUINTEN BRICE MCMURRY,**
        Defendant-Appellant.
_____

        Appeal from the Iowa District Court for Warren County, Kevin A. Parker,

District Associate Judge.


        Quinten McMurry appeals from judgments and sentences entered

following his pleas of guilty to child endangerment and false report of an

incendiary device. **AFFIRMED.**



        Mark C. Smith, State Appellate Defender, and Melinda J. Nye, Assistant

Appellate Defender, for appellant.

        Thomas J. Miller, Attorney General, and Louis S. Sloven, Assistant

Attorney General, for appellee.


        Considered by Danilson, C.J., and Tabor and McDonald, JJ.

**DANILSON, Chief Judge.**

Quinten McMurry appeals from judgments and sentences entered following his plea of guilty to child endangerment, and subsequent revocation of his deferred judgment and probation due to a later plea of guilty to false report of an incendiary device, which he stipulated was a violation of his probation.

**I. Background Facts and Proceedings.**

In January 2016, the district court accepted McMurry's written plea of guilty to child endangerment (FECR028439), deferred judgment, and placed McMurry on probation.

In June 2016, McMurry was charged with false report of an incendiary device, threats, and first-degree harassment (FECR029413). The State moved to dismiss the harassment charge in the interests of justice. On the day of trial, McMurry and the State reached a plea agreement in which he would enter an *Alford* plea to false report of an incendiary device and the State would dismiss the threats charge. After entering his plea, McMurry stipulated that his conviction for false report of an incendiary device was a violation of his earlier probation.

On October 3, 2016, McMurry was sentenced in both cases. With respect to the false report of an incendiary device, the State recommended a five-year suspended prison sentence, two years supervised probation, a fine, plus surcharge and court costs, and "that counts II and III be dismissed with costs to Mr. McMurry." McMurry sought a deferred judgment and community-based probation. The court imposed and suspended a five-year indeterminate prison term and two years' probation. The court also stated:

You're to pay the minimum fine of $750, plus the statutory surcharge and court costs. You're also ordered restitution. I don't know if there is going to be any restitution as to the incident. Further, you're to provide the DNA sample, continue with mental health and substance abuse counseling. You're to pay court costs, costs for court-appointed attorney.

Further, you're to attend the program at the Fort Des Moines Correctional Facility until you attain maximum benefits. I looked in the presentence investigation. I did not see anything that says that you were not qualified for that program. If you're not qualified for that program, then the Court, by an amendment to the judgment entry, will delete that provision, but you're to attend that program at the correctional center, and you're to remain in the Warren County custody until that matriculation happens.

Counts II and III are dismissed.

With respect to the child-endangerment conviction, the court revoked the deferred judgment (upon McMurry's written stipulation of a probation violation) and imposed and then suspended a two-year indeterminate sentence, and placed him back on probation under the same conditions as those imposed on the false-report-of-an-incendiary-device charge. The court ordered him to pay the minimum fine, statutory surcharge, and court costs. The sentences on these two cases run consecutively.

McMurry filed a motion to reconsider, asking the court to amend the sentencing order by removing the requirement that he reside at the Fort Des Moines Residential Facility, contending the program required a resident to work full time and attaching a letter from his psychiatrist, who opined McMurry was not presently able to work full time. The district court denied the motion.

McMurry appeals.

**II. Ineffectiveness Claim.**

A parent commits child endangerment when the parent "[k]nowingly acts in a manner that creates a substantial risk to a child or minor's physical, mental

or emotional health or safety." Iowa Code § 726.6(1)(a) (2014). On appeal, McMurry asserts his plea counsel was ineffective in allowing him plead guilty to child endangerment because his plea was without a factual basis.

We review claims of ineffective assistance of counsel, which are grounded on the Sixth Amendment, de novo. *State v. Schminkey*, 597 N.W.2d 785, 788 (Iowa 1999).

> It is a responsibility of defense counsel to ensure that a client does not plead guilty to a charge for which there is no objective factual basis. It follows that no advice to plead guilty would be considered competent absent a showing of a factual basis to support the crimes to which the accused has elected to plead guilty. Where counsel falls short, a Sixth Amendment violation is present. The determination of whether there is a factual basis in the record to support the charge to which the defendant seeks to plead guilty is an objective inquiry that has nothing to do with the state of mind of the accused, but everything to do with the state of the record evidence.

*State v. Finney*, 834 N.W.2d 46, 54-55 (Iowa 2013). "The factual basis must be contained in the record, and the record, as a whole, must disclose facts to satisfy all elements of the offense." *State v. Ortiz*, 789 N.W.2d 761, at 767-68 (Iowa 2010). "[T]he record does not need to show the totality of evidence necessary to support a guilty conviction, but it need only demonstrate facts that support the offense." *Id.* at 768.

In his written plea, McMurry admitted: "On 12/27/14, I had visitation and was supervising my children and I knowingly acted in a manner that created a substantial risk to my child's emotional health." The minutes of testimony show police went to McMurry's residence, responding to a mother's telephone call in which she stated her son was with his father—McMurry—and had texted her "dad was drinking and that he wanted her to come get him." McMurry answered

the door and said they "couldn't be here without a warrant." The officers smelled "a strong odor of alcohol coming from [McMurry]," and they could see the child sitting on a couch inside the house. An officer "asked the boy if everything was ok and he shook his head no and covered his face." McMurry would not let the officers in to check on the child and tried to physically prevent officers from entering. After placing McMurry under arrest, an officer who spoke with the child noted injuries on his face. Another officer also "observed the injuries to the victim" and took photographs of those injuries. When notified that he would be charged with child endangerment, McMurry replied by saying "his son was being picked on at school so he was teaching him MMA [mixed martial arts] moves and wrestling with him."

This record sufficiently establishes McMurry's conduct created "the very real possibility of danger" to the child's emotional health or safety. *See State v. Anspach*, 627 N.W.2d 227, 233 (Iowa 2001) (noting "the definition of 'substantial risk' in the context of child endangerment is: [t]he very real possibility of danger to a child's physical health or safety"). Not only did the child's text to his mother show there was a possibility of danger to the child's emotional health, but McMurry acknowledged in statements to the police that his conduct with his child resulted in injuries to the child's face. We have no difficulty concluding McMurry "acknowledge[d] facts that are consistent with the elements of the crime." *Rhoades v. State*, 848 N.W.2d 22, 30 (Iowa 2014). Because there is a factual basis for his guilty plea, his ineffectiveness claim fails.

**III. Sentencing.**

"[W]e review a defendant's sentence for the correction of errors at law." *State v. Valin*, 724 N.W.2d 440, 444 (Iowa 2006).

*A. Terms of probation.* "When a defendant challenges the terms of probation, '[i]t has long been a well-settled rule that trial courts have a broad discretion in probation matters which will be interfered with only upon a finding of abuse of that discretion.'" *Id.* (alteration in original). "[A]ny abuse of discretion necessarily results in a legal error." *Id.*

While acknowledging that a district court may impose "'any reasonable conditions' [of probation] that either 'promote rehabilitation of the defendant or protection of the community,'" *see id.* at 445 (citations omitted), McMurry contends the district court abused its discretion in ordering him to complete the residential facility program. He asserts the residential facility program requires participants to work full time and his mental health precludes him from doing so. We are not convinced the court abused its considerable discretion.

The district court did assure McMurry, "If you're not qualified for that [residential correctional facility] program," the court "will delete that provision." McMurry relies upon a letter from his psychiatrist, which states in its entirety: "As of this present day of 10/06/2016 Quinten McMurry is not able to maintain responsibility of a full-time position. Hopefully, this changes when he becomes stabilized so he can maintain a part-time position." We are not convinced this letter supports a conclusion that he is not qualified or able to participate in the program to which he objects. We note McMurry himself stated in allocution that if

given community probation he intended to "[s]eek out minimum part-time employment, possible full-time employment."

*B. Costs.* McMurry next maintains the court imposed an illegal sentence because taxing him with the "payment of costs associated with charges in counts II and III were not authorized by statute." He asserts some unspecified "portion of the sentencing order taxing costs to McMurry should be vacated and the case should be remanded to the district court for entry of a corrected sentencing order."

This court recently observed:

> "Criminal restitution is a creature of statute." *State v. Watson*, 795 N.W.2d 94, 95 (Iowa Ct. App. 2011). Iowa Code section 910.2(1) (2015) requires the sentencing court to order a defendant who pleads guilty to make restitution. Restitution includes payment of court costs. *See* Iowa Code § 910.1(4). In addition, section 815.13 allows the county or city to recover fees and costs incurred in prosecuting a criminal action "unless the defendant is found not guilty or the action is dismissed." Under these sections, a defendant should only be ordered to pay restitution on the counts on which the State obtains a conviction. *See State v. Petrie*, 478 N.W.2d 620, 622 (Iowa 1991). Unless a plea agreement provides for the recovery of costs associated with dismissed charges, only those costs associated with the charges on which a conviction is obtained may be recoverable; where the plea agreement is silent on costs, no costs are recoverable for dismissed charges. *See id.*
> In cases such as this—where a defendant has been charged in one trial information with multiple criminal violations, pled guilty to some charges, and had others dismissed—there are three categories of costs: (1) those clearly attributable to the charges on which the defendant is convicted, (2) those clearly attributable to dismissed charges, and (3) those not clearly associated with any single charge. *See id.* A defendant may be assessed costs clearly attributable to the charges on which the defendant is convicted but may not be assessed costs clearly attributable to dismissed charges. *See id.* "Fees and costs not clearly associated with any single charge should be assessed proportionally against the defendant." *Id.*

*State v. Johnson*, 887 N.W.2d 178, 181-82 (Iowa Ct. App. 2016).

The State asserts all of the court costs[1] that were assessed were "clearly attributable" to the charge to which McMurry pled guilty, "because they would have all been incurred even if the dismissed charges were never filed." *See Petrie*, 478 N.W.2d at 622. We agree, and find no error in the assessment of costs here.[2]

---

[1] The State notes the docket report shows $220 in costs: $100 from the filing/docketing fee; $40 for the court reporter at the June 24 arraignment and bond review hearing; $40 for reporting at the August 26 plea hearing; and $40 for reporting at the October 3 sentencing hearing.

[2] This court has previously discussed problems resulting from *Petrie*:

> *Petrie* has proved to be an administrative burden without material benefit. In many cases, it is well-nigh impossible to determine which costs are associated with any particular count. *See, e.g.*, *Commonwealth v. Soudani*, 165 A.2d 709, 711 ("We fail to perceive how the costs of prosecution in the instant case may be divided or apportioned between the first and second counts of the indictment."). In addition, in many (perhaps most) cases, the costs are indivisible. As this court explained in [*Johnson*, 887 N.W.2d at 182]:
>
> > The fact that some counts were dismissed does not automatically establish that a part of the assessed court costs are attributable to the dismissed counts. Here, the record shows just the opposite. The combined general docket report prepared by the district clerk of court on December 10, 2015, two days after Johnson filed his notice of appeal, shows a total of $210 in court costs accrued as of that date. These costs would have been the same even had the State not charged Johnson with the counts later dismissed. Moreover, the record shows none of the assessed charges are clearly attributable or discrete to the dismissed counts. We therefore conclude the total court costs are clearly attributable to the counts to which Johnson pled guilty and, therefore, fully assessable to him.
>
> . . . . Further, *Petrie* provides no guidance on who is to determine the attribution of costs and the method of allocation. It is an inefficient use of judicial and administrative resources to vacate the defendant's conviction and remand this matter only to have the district court enter the same sentence because the plea agreement is made of record, enter effectively the same sentence because all of the costs are deemed relevant to all of the counts and are indivisible, or enter an order based on an arbitrary allocation of costs with little relationship to the actual costs of securing a conviction.

*C. Attorney's fees.* Finally, McMurry contends the court erred finding "the defendant has the reasonable ability to pay restitution of fees and costs in the amount approved by the State Public Defender or $___, whichever is less." Either this statement is a final ruling that McMurry is able to pay "$__," that is nothing, or it is a nonstatement and subject to a further hearing and ruling on a final plan of restitution. If we treat it as a final ruling, McMurry has nothing about which to complain. If we treat it as a preliminary ruling,[3] it is not properly before us. *See State v. Jackson*, 601 N.W.2d 354, 357 (Iowa 1999) (stating that until a plan of restitution is completed, the court is not required to consider the defendant's ability to pay, and noting that an offender may challenge the amount of restitution by petition under Iowa Code section 910.7). In either event, it is a nonissue.

Finding no error, we affirm.

**AFFIRMED.**

---

*State v. Smith*, No. 15-2194, 2017 WL 108309, at *5 (Iowa Ct. App. Jan. 11, 2017), *further review denied* Mar. 2, 2017.

[3] We observe the court stated at the sentencing hearing: "I don't know if there is going to be any restitution as to the incident." That statement supports the latter alternative—that no plan of restitution is yet completed.