# IN THE COURT OF APPEALS OF IOWA

No. 20-1184
Filed November 3, 2021

**STATE OF IOWA,**
      Plaintiff-Appellee,

**vs.**

**ADAN SOSA PUGA,**
      Defendant-Appellant.

_____

Appeal from the Iowa District Court for Allamakee County, Richard D. Stochl, Judge.

A defendant appeals his conviction and sentence for third-degree sexual abuse. **CONVICTION AFFIRMED, SENTENCE VACATED, AND REMANDED FOR RESENTENCING.**

Martha J. Lucey, State Appellate Defender, and Rachel C. Regenold, Assistant Appellate Defender, for appellant.

Thomas J. Miller, Attorney General, and Sheryl Soich, Assistant Attorney General, for appellee.

Considered by Tabor, P.J., and Greer and Badding, JJ.

**BADDING, Judge.**

Adan Sosa Puga was charged with sexual abuse in the third degree for a sex act involving a teenage co-worker. At his jury trial, a different victim was allowed to testify about a similar incident that occurred between her and Puga. The jury found Puga guilty as charged, and he was sentenced to serve no more than ten years in prison. No reasons were given for the sentence. Puga appeals, challenging the admission of the prior sexual abuse, the failure to state reasons for the sentence that was imposed, and a discrepancy between the oral pronouncement of the sentence and the written judgment entry. We affirm the conviction but vacate the sentence and remand for resentencing.

## I.    *Background Facts and Proceedings*

Fourteen-year-old M.D. was a waitress at a restaurant where Puga cooked. On her day off, M.D. and a friend went to the restaurant to pick up food. When they got there, Puga waved M.D. into the kitchen. She left her friend at the bar and went back to talk to Puga. After some small talk, Puga grabbed M.D. He put his hands on her buttocks, kissed her neck, and rubbed his penis on her vaginal area through her clothes. M.D.'s friend walked into the kitchen and saw this happen. She told M.D. they needed to go, and the two left the restaurant.

According to the friend, M.D. was "upset, embarrassed, [and] scared" after this occurred. They told some other friends about what happened but not M.D.'s parents or the police. One of those friends was fifteen-year-old R.K., who revealed that Puga had done something similar to her several months earlier. R.K. was at Puga's house when he came up behind her, put his hands on her waist, and thrust his penis into her buttocks while she was clothed. As she was walking out the front

door, Puga spanked her on the buttocks. R.K. did not report this incident to the police until after she got in trouble at school. During the investigation of R.K.'s report, the incident with M.D. surfaced.

When questioned by police, Puga said that when M.D. went into the kitchen to tell him hello, he raised his hand to give her a high five. But according to Puga, M.D. put her arms out for a hug, so Puga hugged her. He denied grabbing her, putting his hands on her buttocks, or rubbing his penis against her vaginal area. Puga did not stick with this version at trial. He instead testified that when M.D. came into the kitchen, he gave her the food with his left hand and patted her on the back with his right hand. Puga did not talk about a hug or claim that any contact was accidental during his testimony at trial.

In closing arguments, however, the State focused on Puga's police-interview version, asserting:

> The defendant wants to say, well, no, this was—this was just a misunderstood hug. But then we had fifteen-year-old [R.K.] come in and testify that the defendant did a very similar act to her . . . . This, ladies and gentlemen, was not an accidental hug or a touching, innocent touching.

The jury returned a guilty verdict, following which Puga was sentenced to a term of imprisonment not to exceed ten years. Puga appeals.

## II. Scope and Standards of Review

"We review a district court's evidentiary rulings regarding the admission of prior bad acts for abuse of discretion," although to the extent that constitutional claims are at issue, our review is de novo. *State v. Cox*, 781 N.W.2d 757, 760 (Iowa 2010). Our review of sentencing decisions is for the correction of errors at

law. *State v. Valin*, 724 N.W.2d 440, 444 (Iowa 2006). When a sentence imposed is within statutory limits, it will be affirmed absent an abuse of discretion. *Id.*

### III. Prior Bad Acts Evidence

Puga claims the admission of R.K.'s testimony about a past act of sexual abuse violates Iowa Rule of Evidence 5.404(b) and Iowa Code section 701.11 (2019), as well as the due process clause of the Iowa Constitution. We start with rule 5.404(b)(1), which prohibits "[e]vidence of a crime, wrong, or other act . . . to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." The reason for this rule is not grounded on a belief "that the evidence is irrelevant, but rather on a fear that juries will tend to give it excessive weight, and on a fundamental sense that no one should be convicted of a crime based on his or her previous misdeeds." *Cox*, 781 N.W.2d at 760 (citation omitted). Yet evidence of other crimes, wrongs, or acts may be admissible under rule 5.404(b)(2) if offered to show "motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident."

In sexual abuse cases, however, evidence of other acts of sexual abuse is not limited to those categories. *Id.* at 761. Section 701.11 provides that "evidence of the defendant's commission of another sexual abuse is admissible and may be considered for its bearing on any matter for which the evidence is relevant." The Iowa Supreme Court upheld the constitutionality of section 701.11 in *State v. Reyes*, 744 N.W.2d 95, 102-03 (Iowa 2008), with respect to the admissibility of other sexual abuse involving the same victim. The court reasoned the statute passed constitutional muster as applied in that case because the evidence was "not offered to show a *general propensity* to be attracted sexually to young girls,

but instead to demonstrate the nature of the defendant's relationship and feelings toward a *specific* individual." *Reyes*, 744 N.W.2d at 103.

The holding in *Reyes* was specifically limited to prior incidents involving the same victim, leaving open the constitutionality of section 701.11 "where the prior acts of sexual abuse involve persons other than the current alleged victim." *Id.* at 102 n.1. That open question was decided in *Cox*, which held the due process clause of the "Iowa Constitution prohibits admission of prior bad acts evidence involving a different victim when admitted solely for the purpose of demonstrating propensity. Instead, the evidence must be relevant to a 'legitimate issue.'" 781 N.W.2d at 762. The court reasoned that a "focus on the criminal or aberrant disposition of the defendant with regard to various victims is exactly the sort of prejudice which the general rule seeks to avoid." *Id.* at 767 (citation omitted). Importantly, the court in *Cox* "did not hold that evidence of sexual abuse with different victims is never constitutionally admissible under 701.11." 7 Laurie Kratky Doré, *Iowa Practice Series: Evidence* § 5.404:6.

For other acts of sexual abuse with a different victim to be admissible after *Cox*, the analysis to be applied mirrors the general 5.404(b) analysis. *See Cox*, 781 N.W.2d at 769. The evidence must first be relevant to a legitimate issue in dispute. *See id.*; *see also State v. Putnam*, 848 N.W.2d 1, 9 (Iowa 2014). Second, there "must be clear proof the individual against whom the evidence is offered committed the bad act or crime." *Putnam*, 848 N.W.2d at 9 (citation omitted). And third, the court must determine whether the evidence's probative value is substantially outweighed by the danger of unfair prejudice to the defendant. *Id.*

### A.     Relevance

The State asserts the district court correctly found the evidence was relevant to establish that Puga's contact with M.D. was sexual and not accidental.[1] But Puga argues that was not a legitimate issue in dispute because "it was only the State referencing accidental touching and a 'misunderstood hug' in its closing arguments." We reject this argument for several reasons.

First, it is not entirely accurate. On cross-examination, after M.D. testified that she was sure she felt Puga's penis rub against her vaginal area, defense counsel insinuated that M.D. misunderstood the contact:

> So—so you're not aware if perhaps Adan had something in his pocket? A. I don't know.
> Q. You don't know? Okay. And you don't know if he had some sort of a—perhaps a belt buckle on or something that was—that would be around his waist? A. I don't know.

Second, while it was the State's witness who testified to Puga's initial story about a "misunderstood hug," there is nothing in rule 5.404(b) or related cases that require the evidence to be used by the State to rebut a *defense* theory. *See State v. Weltman*, No. 20-0860, 2021 WL 2768910, at *6 n.3 (Iowa Ct. App. June 30, 2021). Instead, the evidence must just be relevant to a "legitimate issue in dispute." A legitimate issue in dispute was whether Puga's contact with M.D. was sexual in nature.

The jury was instructed that to find Puga guilty of third-degree sexual abuse, one of the elements the State needed to prove was that "Puga performed a sex

---

[1] The district court also found the evidence was relevant to explain M.D.'s delay in reporting the sexual abuse. The State does not advance that theory of relevancy on appeal, so we will not discuss it further.

act with M.D." *See* Iowa Code § 709.4(1)(b). "Sex act" was defined in part for the jury as "any sexual contact . . . [b]etween the genitals of one person and the genitals or anus of another." *See id.* § 702.17. "Not all contact is a 'sex act.'" *State v. Pearson*, 514 N.W.2d 452, 455 (Iowa 1994). In determining whether a sex act occurred, the jury was instructed it could "consider the type of contact and the circumstances surrounding it in deciding whether the contact was sexual in nature. Skin-to-skin contact is not required in order to establish a 'sex act.' Prohibited contact may occur even though the specified body parts are covered by clothing." Seizing upon these considerations, the State argues "the fact that Puga assaulted another teenage girl under similar circumstances—grinding his clothed penis into her body without her consent—makes it more likely that his conduct with M.D. was sexual in nature and less likely that his hug of M.D. had an innocent or non-sexual purpose" or that it was accidental. We agree.

We have relied on this theory of relevance in several sexual abuse cases to combat claims that contact between two individuals was not sexual or that it was accidental. *See, e.g.*, *State v. Thoren*, No. 20-0192, 2021 WL 1017405, at *3 (Iowa Ct. App. Mar. 17, 2021) (finding testimony of five former massage therapy clients "in similar settings, who experienced similar incidents" was relevant to show the defendant's lack of mistake); *Weltman*, 2021 WL 2768910, at *6 (concluding evidence about defendant's actions with the victim on a trip that occurred after the sexual abuse was relevant to establish the lack of mistake or accident); *State v. Daugard*, No. 06-0537, 2007 WL 1062867, at *3 (Iowa Ct. App. Apr. 11, 2007) (allowing defendant's coworkers to testify about prior interactions between the victim and defendant because it was relevant to the defense of mistake or

accident).  Although *Weltman*, 2021 WL 2768910, at *6, and *Daugard*, 2007 WL 1062867, at *3, involved other acts of sexual abuse with the same victim, our supreme court recognized in *Cox* that prior bad acts with different victims can be relevant to motive or intent "when a defendant claims [the] touching was accidental."  781 N.W.2d at 771.

The court in *Cox* did go on to find that evidence of the defendant's sexual abuse of two other victims was not relevant to establish motive or intent in its case because the State did not have to prove specific intent for the sexual abuse charges, "only that the alleged sexual conduct occurred."  *Id.*; *see also Putnam*, 848 N.W.2d at 10 (finding that the perpetrator's motive for sexual abuse was not a legitimate issue in dispute because his state of mind was not an element of the crime).  While motive and intent are also not at issue in this prosecution for third-degree sexual abuse, evidence of Puga's similar sexual abuse of R.K. speaks not to those issues but to whether his contact with M.D. was sexual in nature.[2]  Unlike *Cox*, 781 N.W.2d at 771, the sexual nature of Puga's contact with M.D. was an element that was in dispute in this case.  There was therefore no abuse of discretion in allowing R.K. to testify about her experience with Puga.  And because R.K.'s testimony about the past sex act was relevant for a non-propensity purpose,

---

[2] We decline the State's invitation to find that Puga's denial of the sexual nature of the contact made his motive "relevant to provide an explanation for the contact." Puga's state of mind was not an element of the crime and thus not at issue.  *See Weltman*, 2021 WL 2768910, at *6.  The State simply needed to prove the contact between the specified parts of Puga's body with the specified parts of M.D.'s body was sexual in nature.  *See id.*  Puga's motive for making that contact was immaterial.  *See id.*

it adhered to the due process guarantee under our state's constitution. *See Reyes*, 744 N.W.2d at 103.

### B. Clear Proof

Puga next argues the clear-proof requirement was not met because R.K. was not a credible witness. In support of this argument, Puga relies on the timing of R.K.'s disclosure of the sexual abuse to the police, noting it came after she got in trouble at school for an incident involving Puga's son. "[D]irect testimony from the victim of a prior alleged assault, as a matter of law, is sufficient 'clear proof' to meet the code requirement." *Id.* at 101. R.K.'s trial testimony about the past incident, which was subject to cross-examination and not denied by Puga, was accordingly sufficient to satisfy the clear-proof requirement. *See Putnam*, 848 N.W.2d at 9 (noting that clear proof does not require the bad acts to be established beyond a reasonable doubt or corroborated by other evidence); *State v. Zeliadt*, 541 N.W.2d 558, 561 (Iowa Ct. App. 1995) (finding testimony from a single witness clear proof of the prior act).

### C. Balancing Test

We are left with whether the probative value of the evidence was substantially outweighed by the danger of unfair prejudice. Iowa R. Evid. 5.403; *Cox*, 781 N.W.2d at 761, 769. Factors relevant to this balancing test include:

> the need for the evidence in light of the issues and the other evidence available to the prosecution, whether there is clear proof the defendant committed the prior bad acts, the strength or weakness of the evidence on the relevant issue, and the degree to which the fact finder will be prompted to decide the case on an improper basis.

*Putnam*, 848 N.W.2d at 9-10 (citation omitted).

On the probative side of the scales, Puga argues the need for the evidence was not great because the State had testimony from M.D.'s friend who witnessed the sex act. But as the State points out, the sexual contact "was brief and occurred through clothing while Puga and M.D. were in a relatively public place." *See Weltman*, 2021 WL 2768910, at *6 (finding that the need for the other acts evidence was strong given the short duration of the touch). While there was a witness to the contact, Puga denied that anything improper had occurred, thus increasing the need for the other sexual abuse evidence. *See, e.g., State v. Blaufuss*, No. 15-2174, 2016 WL 6396345, at *3 (Iowa Ct. App. Oct. 26, 2016) (finding evidence of prior sexual abuse of same victim crucial to the State's case because the defendant denied any sexual contact with her); *State v. Query*, 594 N.W.2d 438, 444 (Iowa Ct. App. Feb. 24, 1999) (concluding the State needed the prior bad acts evidence to rebut defendant's claims the acts were innocent or accidental).

On the unfairly prejudicial side of the scales, the State did not spend much time developing testimony about the prior bad act during trial. *See State v. Wright*, No. 12-2138, 2014 WL 956064, at *4 (Iowa Ct. App. Mar. 12, 2014). R.K.'s testimony about the act was "concise, direct, and noninflammatory, and of a nature similar to that in the underlying charge," thus decreasing the chance that it would incite "overmastering hostility" toward the defendant. *Reyes*, 744 N.W.2d at 100. The uncharged act with R.K. was also close in time to the charged act with M.D., further mitigating the potential for unfair prejudice. *Wright*, 2014 WL 956064, at *4.

The district court's failure to give a limiting instruction to the jury on the permissible use of R.K.'s testimony does give us some pause. *See id.* (recognizing

the importance that limiting instructions have in minimizing prejudice). But Iowa law does not require that such cautionary instructions be given. *See State v. Plain*, 898 N.W.2d 801, 816 (Iowa 2017). And though a limiting instruction was not given, the district court was careful to screen out other sex acts between Puga and R.K. that were remote in time or not similar to his conduct with M.D. *See Putnam*, 848 N.W.2d at 15 (indicating "that concerns about prejudice to a defendant might be eased by narrowing the scope of the prior-bad-acts evidence presented to the jury"). We are therefore unable to say that the lack of a limiting instruction made R.K.'s testimony unfairly prejudicial, particularly considering the leeway to be given to trial judges faced with making these discretionary calls. *See State v. Rodriquez*, 636 N.W.2d 234, 240 (Iowa 2001) ("Analyzing and weighing the pertinent costs and benefits of admitting prior acts evidence is no trivial task. Wise judges may come to differing conclusions in similar situations.").

### IV.    *Sentencing Errors*

Puga claims the district court abused its discretion in failing to state any reasons for sentencing him to prison and ordering him to pay category "B" restitution in its written judgment entry after finding on the record that he did not have a reasonable ability to pay that category of restitution. The State concedes error on both counts. *See* Iowa R. Crim. P. 2.23(3)(d) (requiring the sentencing court to state on the record its reasons for selecting a particular sentencing); *State v. Oliver*, 588 N.W.2d 412, 414 (Iowa 1998) (vacating sentence and remanding for resentencing where court failed to state reasons for nonmandatory sentence); *State v. Hess*, 533 N.W.2d 525, 526 (Iowa 1995) (noting where there is a

discrepancy between the oral pronouncement of sentence and the written judgment, the oral pronouncement controls).

We accordingly vacate Puga's sentence and remand his case for resentencing. On remand, the district court should state its reasons on the record for selecting Puga's particular sentence and address the issue of category "B" restitution.

## V. *Conclusion*

The district court did not abuse its discretion in allowing a different victim to testify about Puga's past sexual abuse of her because the evidence was relevant to show that Puga's contact with the victim here was sexual in nature and not accidental. The court did, however, abuse its discretion in failing to give reasons for the sentence it imposed and requiring Puga to pay category "B" restitution in its written judgment entry. Puga's conviction is therefore affirmed, but his sentence is vacated and the case remanded for resentencing.

**CONVICTION AFFIRMED, SENTENCED VACATED, AND REMANDED FOR RESENTENCING.**