# IN THE COURT OF APPEALS OF IOWA

————————

No. 25-0098
Filed June 10, 2026

————————

**State of Iowa,**
Plaintiff–Appellee,

v.

**Matthew Jason Manos,**
Defendant–Appellant.

————————

Appeal from the Iowa District Court for Linn County,
The Honorable Valerie L. Clay, Judge.

————————

**AFFIRMED IN PART AND REMANDED IN PART WITH
INSTRUCTIONS**

————————

Martha J. Lucey, State Appellate Defender, and Josh Irwin, Assistant
Appellate Defender, attorneys for appellant.

Brenna Bird, Attorney General, and Joseph D. Ferrentino, Assistant
Attorney General, attorneys for appellee.

————————

Considered without oral argument.
by Greer, P.J., and Schumacher and Chicchelly, JJ.
Opinion by Schumacher, J.

**SCHUMACHER, Judge.**

A Linn County jury found Matthew Manos guilty of eight crimes relating to sexual abuse of his then-girlfriend's daughter. On appeal, Manos challenges the sufficiency of the evidence supporting his convictions for continuous sexual abuse of a child, second-degree sexual abuse, lascivious acts with a child, lascivious conduct with a minor, and dissemination and exhibition of obscene material to a minor. Manos also claims the district court failed to apply the weight-of-the-evidence standard to his motion for new trial and the court imposed an illegal sentence by requiring him to complete sex offender treatment. Upon our review, we conditionally affirm Manos's convictions and remand to the district court to apply the weight-of-the-evidence standard as to Manos's motion for a new trial. If the court denies the motion after applying the correct standard, then we vacate the portion of Manos's sentence that requires completion of sex offender treatment and the district court shall impose a new sentencing order to redact this requirement.

## BACKGROUND FACTS AND PROCEEDINGS

A reasonable jury could find the following facts. Manos began dating A.J. in early 2021. A.J. and her children, including M.J.-G., moved into Manos's home in December of that year. Manos and A.J. ended their relationship in February 2023, and A.J. and her children moved out of his home. M.J.-G., eleven years old at the time of trial, has been diagnosed with autism spectrum disorder, level 1, ADHD, and oppositional defiant disorder. These medical issues manifest in M.J.-G. having difficulty recognizing social cues and interpreting body language.

While M.J.-G., A.J., the two other children, and Manos lived together, Manos sexually abused M.J.-G. She testified that Manos touched her "no-no spot," a phrase M.J.-G. uses to refer to genitals. Manos requested to look at

and lick her "no-no spot" and described to M.J.-G. in detail how sex works. Manos also asked M.J.-G. to touch his "no-no spot." After being asked how she touched him, it appeared that she was "holding something with four fingers around on one side and [her] thumb around the other," while "moving [her] arm up and down." Manos asked her to touch him in that manner "so he could get the white stuff out," which she observed. M.J.-G. stated this occurred more than once and she complied because she "didn't want anything bad happening." This occurred in several rooms of the house, including her bedroom.

Manos also touched M.J.-G.'s genitals with his hands, which she described as feeling like "hell." She stated she thought this happened several times and in different rooms of the house. M.J.-G. described that Manos touched her during the school year, the summer, and when there was snow on the ground.

Manos showed M.J.-G. pornography on his phone, which she referred to as "horn." She remembered seeing a "man and a woman having sex" and thought she saw "white stuff."

M.J.-G. liked to play a song on YouTube that she called the "butt song" while she was in her bedroom. When playing the song, she would pull down her pants and "check [her] butt in front of the mirror." Once when she was doing this, Manos entered her bedroom, "took his no-no spot out," and "played with it." Manos also touched M.J.-G.'s leg with his genitals in her bedroom. He also requested to see M.J.-G.'s anus, which she showed to him.

After A.J. and Manos separated in 2023, A.J. and the children began living with A.J.'s mother and A.J.'s stepfather. Not long after this move, M.J.-

3

G. informed her grandmother of Manos's abuse. A.J. then reported this information to law enforcement.

After law enforcement investigated the accusations, Manos was charged with: (I) continuous sexual abuse of a child, a class "B" felony, in violation of Iowa Code section 709.23(2) (2023); (II) sexual abuse in the second degree, a class "B" felony, in violation of section 709.3(1)(b); (III) sexual abuse in the second degree, a class "B" felony, in violation of section 709.3(1)(b); (IV) lascivious acts with a child (causing touching of a person's genitals to the body of a child), a class "C" felony, in violation of section 709.8(1)(c); (V) lascivious acts with a child (solicitation), a class "D" felony, in violation of section 709.8(1)(d); (VI) lascivious conduct with a minor (persuade or coerce to disrobe or partially disrobe), a serious misdemeanor, in violation of section 709.14(1); (VII) dissemination and exhibition of obscene material to minors, a serious misdemeanor, in violation of section 728.2; and (VIII) indecent exposure, a serious misdemeanor, in violation of section 709.9(1).

Manos was convicted of all counts following a jury trial, with counts II and III merged into count I for sentencing. Manos appeals his convictions.

## ANALYSIS

### I.   Sufficiency of the Evidence

Manos asserts that the evidence is insufficient to support six of his eight convictions. The counts that he challenges are: (I) continuous sexual abuse of a child; (II) sexual abuse in the second degree; (III) sexual abuse in the second degree; (V) lascivious acts with a child (solicitation); (VI) lascivious conduct with a minor (persuade or coerce to disrobe or partially disrobe); and (VII) dissemination and exhibition of obscene material

4

to minors. Manos does not challenge the sufficiency of the evidence as to counts IV and VIII.

"We review the sufficiency of the evidence for correction of errors at law." *State v. Crawford*, 972 N.W.2d 189, 202 (Iowa 2022) (citation omitted). When reviewing sufficiency challenges, "we are highly deferential to the jury's verdict," and that "verdict binds this court if [it] is supported by substantial evidence." *Id.* We define "substantial evidence" as "evidence sufficient to convince a rational trier of fact the defendant is guilty beyond a reasonable doubt." *Id.* "In determining whether the jury's verdict is supported by substantial evidence, we view the evidence in the light most favorable to the State, including all 'legitimate inferences and presumptions that may fairly and reasonably be deduced from the record evidence.'" *Id.* (citation omitted).

We begin our analysis with counts II and III, which relate to count I. For count II, sexual abuse in the second degree, the State had to prove:

1. On or about September 1, 2021, through and including February 12, 2023, the defendant had sexual contact with M.J.-G. between her finger or hand and the defendant's genitals.

2. At the time of the conduct, M.J.-G. was under the age of 12.

Manos argues that the evidence showing that M.J.-G. touched his genitals "is insufficient to establish, beyond speculation, suspicion, or conjecture, that the requisite contact occurred." He asserts M.J.-G.'s "testimony was equivocal, vague and inconsistent," pointing to qualifying phrases such as "I don't know," "probably," and "I think so," when describing the abuse. He also asserts that because M.J.-G. was inconsistent in describing where the abuse occurred, she was not a credible witness.

5

We find there was sufficient evidence for the jury to determine that M.J.-G. had sexual contact with Manos's genitals. She testified that Manos requested her to touch his genitals. M.J.-G. was asked to show how she touched him and "it looked almost as if [she was] pretending that [she was] holding something with four fingers around one side and [her] thumb around the other. And [she] was moving [her] arm up and down." She testified that Manos requested her to touch him "so he could get the white stuff out." When asked if she saw "white stuff" she answered in the affirmative, and that she saw it "[f]rom his no-no spot."

The jury determined M.J.-G.'s testimony was credible, notwithstanding her qualifying language. And "[i]t is not our place to resolve conflicts in the evidence, to pass on the credibility of witnesses, to determine the plausibility of explanations, or to weigh the evidence," as it is "for the jury to decide which evidence to accept or reject." *State v. Brimmer*, 983 N.W.2d 247, 256 (Iowa 2022) (cleaned up). It is "not for us to second-guess on a cold record." *State v. Hernandez*, 20 N.W.3d 502, 507 (Iowa Ct. App. 2025).

Our analysis as to count III is much the same. On this count, sexual abuse in the second degree, the State had to prove:

1. On or about September 1, 2021, through and including February 12, 2023, the defendant had sexual contact with M.J.-G. between his finger or hand and her genitals.

2. At the time of the conduct, M.J.-G. was under the age of 12 years.

Manos argues that M.J.-G. did not specify how or where he touched her with his hands, and so her testimony was speculative. *See State v. Topete-Duenas*, No. 08-1381, 2009 WL 4114154, at *6 (Iowa Ct. App. Nov. 25, 2009) (finding the victim could not establish that defendant touched her genitalia

because she did not distinguish between the terms "genitalia," "genital area," and "inappropriate part.").

Here, M.J.-G. was sufficiently specific when referring to where Manos touched her. She described her "no-no spot" as "between your legs" and that it is where you "[g]o pee." This description was not a reference to an indeterminate "genital area." *See id.* She stated the touching happened multiple times to her "no-no area." Again, we are not to "determine the plausibility of explanations, or to weigh the evidence." *Brimmer*, 983 N.W.2d at 256 (citation omitted). Rather, it is "for the jury to decide which evidence to accept or reject." *Id.* We find there was substantial evidence to support the conviction of sexual abuse in the second degree.

We return to count I, continuous sexual abuse of a child. To convict Manos on this count, the State had to prove:

1. On or about September 1, 2021, through and including February 12, 2023, the defendant engaged in any combination of three or more acts of sexual abuse with the same child.

2. At least thirty days elapsed between the first and last acts of sexual abuse.

3. At the time of the conduct, the defendant was at least 18 years of age.

Manos contends that M.J.-G.'s testimony concerning when specific instances of abuse occurred was unclear, and the "lack of specificity provid[ed] no reasonable ground upon which the jury could have concluded the 30-day element was met." He also asserts M.J.-G.'s testimony failed to establish that three or more acts of sexual abuse occurred.

Although M.J.-G.'s testimony regarding where and how many times the abuse happened was initially equivocal, she confirmed she "touched his no-no spot" on at least three separate occasions. When asked where in the

home she touched Manos, M.J.-G. replied, "The parents' bedroom, I think—yeah, the living room, my bedroom, I think. I don't remember if it was actually my bedroom. I don't know." But when the State asked for clarification, "You said parents' bedroom, living room, and your bedroom; is that right?," M.J-G. responded, "Yes." M.J.-G. also testified much the same about the locations where Manos touched her genitals. Based on this testimony, the jury could reasonably infer she was describing three separate acts of abuse. *See id.*

As to the thirty-day element, M.J.-G.'s testimony described that the abuse lasted beyond thirty days. When asked about when Manos touched her genitals, she confirmed it happened during the school year, the summer, and when there was snow on the ground. She also stated she thought she touched Manos's genitals during the school year. *See State v. Yeo*, 659 N.W.2d 544, 550 (Iowa 2003) (explaining the evidence of instances of sexual abuse "does not mean that evidence of the *precise* time and place of each incident or act is required, but merely means the three or more acts must be separated by time and place so that each incident is separate and distinct"). This testimony is sufficient for the jury to reasonably infer that the instances of abuse occurred beyond thirty days of each other. *See id.* We find there is substantial evidence to support the conviction of continuous sexual abuse of a child.

Manos next asserts the evidence is insufficient to support the conviction of lascivious acts with a child based on solicitation. To convict Manos of this count, the State had to prove:

1. On or about September 1, 2021, through and including February 12, 2023, the defendant, with or without M.J.-G.'s consent, solicited M.J.-G. to engage in a sex act.

2. The defendant did so with the specific intent to arouse or satisfy sexual desires of the defendant or M.J.-G.

8

3. At the time of the conduct, the defendant was 16 years of age or older.

4. At the time of the conduct, M.J.-G. was under the age of 14.

Included within the jury instructions, one definition of "[s]ex act" "means any sexual contact . . . [b]etween the mouth of one person and the genitals and anus of another." And "'[s]olicited' means to have commanded, begged, or to have otherwise attempted to convince someone to do something." Manos argues the evidence is insufficient to show that he solicited either genital to genital or mouth to genital contact because "she did not say where or when [the act] occurred, or why she believed Manos 'wanted' that."

When asked why M.G.-J. thought Manos asked to have sex with her, she stated, "Because he wanted to lick my no-no spot. And that's a type of sex." The State then asked, "So he wanted to—did you say lick your no-no spot?" M.G.-J. responded, "Yes. But I said no."

This testimonial evidence shows Manos made this request with "specific intent to arouse or satisfy [his] sexual desires." Specific intent can "be established by circumstantial evidence and by inferences reasonably to be drawn from the conduct of the defendant and from all the attendant circumstances in the light of human behavior and experience." *State v. Kelso-Christy*, 911 N.W.2d 663, 667–68 (Iowa 2018) (quoting *State v. Casady*, 491 N.W.2d 782, 787 (Iowa 1992)). It is reasonable that the jury inferred that Manos's request to induce mouth-to-genital contact with M.G.-J.'s "no-no spot" qualifies as solicitation to satisfy his sexual desires. *See Brimmer*, 983 N.W.2d at 256. We find the evidence is sufficient to support the conviction of lascivious acts with a child based on solicitation.

We next turn to Manos's conviction for count VI, lascivious conduct with a minor. To convict Manos on this count, the State had to prove:

1. On or about September 1, 2021, through and including February 12, 2023, the defendant forced, persuaded, or coerced M.J.-G., with or without her consent, to disrobe or partially disrobe.

2. The defendant engaged in such conduct with the specific intent to arouse or satisfy the sexual desires of the defendant or M.J.-G.

3. At the time of the conduct, the defendant was 18 years of age or older.

4. At the time of the conduct, the defendant was in a position of authority over M.J.-G.

5. At the time of the conduct, M.J.-G. was under the age of 18 and never married.

Manos contends that the evidence was insufficient that Manos "forced, persuaded, or coerced M.J.-G., with or without her consent to disrobe or partially disrobe," and that he had "the specific intent to arouse or satisfy the sexual desires of the defendant or M.J.-G." He asserts M.J.-G.'s testimony concerning this count "is speculation, suspicion, or conjecture" and it failed to show the act occurred with "specific intent to arouse or satisfy sexual desire."

Again, M.G.-J.'s testimony establishes both challenged elements. She indicated Manos wanted to see her "butthole," and that she was in her bedroom performing the "butt song" when he asked to see it. She testified that she thought she took her clothes off so Manos could see it. The State also presented video evidence of M.G.-J. reenacting the event for a CPC interview, where she reached back and spread her buttocks. The jury could reasonably infer that Manos's request at least persuaded M.G.-J. to partially disrobe. *See id.*

Regarding Manos's intent in asking M.G.-J. to do the act, the evidence establishes he did so with specific intent to satisfy or arouse his sexual desires. M.G.-J. testified that when Manos entered her room while she was performing the "butt song," he "took his no-no spot out," and "[h]e played with it." It was reasonable for the jury to infer that Manos intended to arouse or satisfy his sexual desires when he asked M.J.-G. to show him her "butthole." *See Kelso-Christy*, 911 N.W.2d at 667–68. We find there is substantial evidence to support this conviction.

Lastly, Manos argues that the evidence is insufficient to support his conviction for count VII, dissemination and exhibition of obscene material to minors. To convict Manos of this count, the State needed to prove:

1. On or about September 1, 2021, through and including February 12, 2023, the defendant knowingly exhibited or transferred possession of material to M.J.-G.

2. The material was obscene.

3. At the time of the conduct, M.J.-G. was under the age of 18.

4. The defendant was not a parent or guardian of M.J.-G.

The jury instructions also provided a definition of "obscene material":

"Obscene material" is any material depicting the genitals, sex acts, masturbation, excretory functions, or sadomasochistic abuse which the average person, taking the material as a whole and applying contemporary community standards with respect to what is suitable material for minors, would find appeals to the prurient interests and is patently offensive; and the material, taken as a whole, lacks serious literary, scientific, political, or artistic value.

Manos contends that M.G.-J.'s testimony was insufficient to establish that he transferred possession of obscene material and the State failed to

prove the material "lack[ed] serious literary, scientific, political, or artistic value."

During her testimony, M.G.-J. was asked if Manos showed her anything related to sex. She affirmatively responded that Manos showed her "horn," which she described as "[a] man and a woman having sex." And although she could not describe the sex in question that was shown to her, stating, "I don't know how to describe it," M.G.-J. thought she saw "white stuff" when viewing the material. Law enforcement also found pornography downloaded and saved to Manos's phone. M.G.-J. also testified that Manos described sex to her, and she interpreted it as "they strip naked, and they put their no-no spots in each other, and they lick each other's no-no spots." This testimony was evidence from which the jury could reasonably infer that Manos knowingly exhibited obscene material to M.G.-J. *See Brimmer*, 983 N.W.2d at 256.

Manos's argument that the State failed to show the material was not an example of "serious literary, scientific, or artistic value" is not persuasive. There is no evidence that the material Manos exhibited was created with or possessed such value. M.G.-J., based on her descriptions of sex and the material, and that it made her "uncomfortable" and she "thought it was inappropriate" could lead the jury to determine the material was obscene. Substantial evidence supports the jury's finding that Manos exhibited obscene material to a minor.

## II.  Motion for New Trial

Manos asserts the district court applied the incorrect sufficiency-of-the-evidence standard rather than the weight of the evidence standard when denying his motion for a new trial. The State concedes the district court erred but contends that this issue is not preserved for our review.

The State initially argues that Manos failed to "allege the verdict is against the weight of the evidence" in his motion for new trial. Second, in the alternative, if we determine Manos asserted the correct standard in his motion, the State argues that the district court did not rule on it, precluding preservation. *See Meier v. Senecaut*, 641 N.W.2d 532, 537 (Iowa 2002).

While Manos's motion for a new trial and brief in support of the motion may have blurred the lines between sufficiency of the evidence and weight of the evidence, we conclude Manos sufficiently raised the weight-of-the-evidence challenge to the district court in his motion for a new trial and at hearing on the motion. And to the preservation issue, our supreme court has recently clarified this issue, holding that a defendant need not "file a motion or otherwise bring the mistake to the court's attention to preserve error on a claim that the district court applied the wrong standard when denying a motion for new trial." *State v. Jackson*, ___ N.W.3d ___, ___, 2026 WL 1354362, at *4 n.1 (Iowa 2026). Accordingly, previous decisions suggesting notification to the district court of usage of an incorrect standard when ruling on "a motion for new trial should not be followed." *Id.* Manos preserved error on this issue. *See id.*

But as in *Jackson*, and as the State concedes here, the district court applied the incorrect standard in ruling on the motion for new trial under the weight-of-the-evidence standard. "Therefore, we reverse the district court ruling on the motion for new trial . . . and remand the case to the district court to apply the correct standard in considering the motion." *State v. Ary*, 877 N.W.2d 686, 707 (Iowa 2016).

III.    **Imposition of Sex Offender Treatment**

Manos contends the district court abused its discretion in ordering him to participate in sex offender treatment as a part of his sentence. The

State concedes the district court abused its discretion in this portion of Manos's sentence. "We review sentences imposed in criminal cases for correction of errors at law" and a sentence "will only be overturned for an abuse of discretion or the consideration of inappropriate matters." *State v. McCollaugh*, 5 N.W.3d 620, 627 (Iowa 2024).

The district court incorrectly ordered Manos to "attend and successfully complete the Sex Offender Treatment Program." The district court lacked authority to impose this requirement. *See* Iowa Code § 901.5; *Dykstra v. Iowa Dist. Ct.*, 783 N.W.2d 473, 478–79 (Iowa 2010). That authority belongs to the department of corrections. *Dykstra*, 783 N.W.2d at 478–79. Because the district court "was without statutory authority to order this requirement . . . it constitutes an illegal sentence." *State v. Hurry*, No. 23-1731, 2024 WL 2842223, at *2 (Iowa Ct. App. June 5, 2024). We accordingly "vacate this portion of the sentencing order" and, should the district court deny the motion for new trial on remand, direct the district court to impose a new sentencing order absent this requirement. *Id.*

## CONCLUSION

We find there was sufficient evidence to support each conviction, the district court applied an incorrect standard in ruling on Manos's motion for new trial, and the district court abused its discretion in ordering sex offender treatment as a part of the sentence.

**AFFIRMED IN PART AND REMANDED IN PART WITH INSTRUCTIONS.**